# Ritch *v.* Kilby Frog & Switch Co.

## *Injury to Servant.*

### (Decided Dec. 21, 1909.   51 South. 377.)

1. *Master and Servant; Injury to Servant; Complaint.*—A complaint for injury to a servant which alleges defects in appliances and places for doing the work should allege facts showing a connection between the defects or negligence complained of and the injuries sustained, or that such defects or negligence were the cause proximately of the injury.

2. *Same; Contributory Negligence.*—Where a servant voluntarily attempts to replace a belt on a pulley while it is making from one to two hundred revolutions per minute, he is guilty of contributory negligence.

3. *Same; Assumption of Risk.*—Where a servant voluntarily undertakes to replace a belt on a pulley making from one to two hundred revolutions per minute, he assumes the risk of injury, although he had no absolute authority to order the machinery stopped for the purpose of replacing the belt.

APPEAL from Calhoun Circuit Court.

Heard before Hon. JOHN PELHAM.

Action by Arthur E. Ritch against the Kilby Frog & Switch Company for personal injuries. Defendant had judgment by direction of the court, and plaintiff appeals. Affirmed.

The plaintiff, Arthur E. Ritch, brought his suit against the Kilby Frog & Switch Company to recover the sum of $10,000 damages received by him while in the employ of the Alabama Frog & Switch Company, of which the Kilby Frog & Switch Company is the successor. The complaint contained eight counts. Each count averred that the plaintiff was injured while in the discharge of his duty in replacing a belt connecting one of the main shafts in said plant with a counter-shaft; that in order to replace the belt it was necessary for the plaintiff to mount upon a ladder, and that the

ladder became jammed against a pulley on the shaft, and was broken, and by reason thereof the plaintiff had to turn loose the belt that he was endeavoring to replace on the pulley, and the belt thereupon lapped, pulling down the countershaft, and inflicting the injuries complained of. The first three counts averred that the injury was the proximate result of defect in the ways, works, etc. The first count avers that the ladder was defective; the second count, that the ladder was defective, in that it was too short; the third count, that the ladder was too short and weak. The fourth count alleged that the defendant was negligent in failing to provide a safe place for the plaintiff to work, in that it was necessary in the discharge of his duties to replace a belt while the shaft was revolving; that located on one side and almost immediately beneath the shaft was a heating furnace, and that the heat from said furnace was so great that it was not possible for the plaintiff to mount to the shaft on the side from which it was revolving, but that it was necessary to mount a ladder on the opposite side of the shaft, toward which the shaft was running, and by reason thereof the ladder became jammed against the pulley and was broken; that, but for the location of said heating furnace, he could have mounted on said ladder on the opposite side, and replaced the belt in safety. The fifth count contained substantially the same averment as the fourth count, and avers that the defendant had negligently failed to place a platform under or near said shaft, upon which plaintiff might stand while replacing said belt. The sixth count alleged that the plant was defective by reason of the location of the furnace so near to said main shaft and beneath the same as to require the ladder to be placed on the side of the shaft toward which the pulley was revolving. The seventh count averred that

the injuries were received by reason of the negligence of one C. H. Krauss, the superintendent, and that the negligence of Krauss consisited in placing on the floor below the main shaft the said heating furnace, which necessitated the plaintiff's mounting to said shaft on the side toward which it was revolving. The eighth count charged that the negligence was that of Superintendent Krauss, in that, knowing the location of the shaft and of the heating furnace, and the necessity of mounting to the shaft for the purpose of replacing the belt, he had negligently failed to erect a platform under or near said shaft, upon which plaintiff might stand while replacing the belt.

The defendant demurred to each count of the complaint. The court sustained the demurrer to counts 4, 5, 6, and 8, and overruled the demurrer as to counts 1, 2, 3, and 7. The plaintiff assigns as error the action of the court in sustaining demurrer to each of said counts 4, 5, 6, and 8. The defendant interposed several pleas, to some of which demurrers were sustained, and the case was tried on the general issue, and on the third and fourth pleas, and plea B, interposed to each count of the complaint, and the seventh, eighth, and ninth pleas, which were interposed to the first, second, and third counts, respectively. The third plea set up contributory negligence on the part of the plaintiff, in that he negligently placed his ladder against the revolving pulley while it was revolving. The fourth plea charged contributory negligence on the part of the plaintiff, in that there was a safe way to belt the said pulley, that is, by stopping the shaft and pulley from revolving, which plaintiff had full power and authority to do, and averred that plaintiff chose an obviously dangerous way of attempting to replace the belt upon said pulley while the same was revolving. Plea B set up an assumption

of risk, in that plaintiff was the foreman of the switch department in defendant's plant, and had charge of the machinery and appliances, including the ladders, and averred that the plaintiff knew of the alleged defects, and negligently remained in the employment of the defendant for an unreasonable length of time. The seventh plea, interposed to the first count, set up an assumption of risk, in that plaintiff knew that the ladder was defective, and knew the danger of using it in the manner alleged, and notwithstanding, attempted to use the ladder. The eighth and ninth pleas were the same in substance; the only change being the charge of knowledge on the part of the plaintiff of the defect alleged in the second and third counts.

The evidence showed that the Alabama Frog & Switch Company and the Kilby Frog & Switch Company were each corporations under the laws of Alabama, and that they had consolidated in the manner provided by the statutes of the state by the action of their board of directors, and that the name of the consolidated corporation was the "Kilby Frog & Switch Company." The evidence also charged that the plaintifl, while in the employ of the Alabama Frog & Switch Company, and before the consolidation, received severe and dangerous physical injuries, which resulted in permanent injury. It showed that one the duties of the plaintiff was to replace belts, and that he was notified by his superior in the service to put on the belt at the time he received his injuries. He found the ladder standing against the shafting. He testified that he could not tell whether the ladder was too short or two long until after he had gotten up on it and after it had began to slip into the pulley; that, when he reached for the belt, it threw his weight on one side of the ladder, which caused it to go into the pulley, and to be caught by the

spokes of the pulley and crushed. The belt then lapped around the shaft, and pulled down upon the plaintiff the countershaft. The undisputed evidence showed that a heating furnace was located below the shaft, and slightly to one side of it, and that the heat arose from this furnace to such an extent that a man could not mount on the side on which the furnace was located; that, but for the location of the furnace, the ladder could have been placed on the side away from which the pully was revolving, and that the ladder could not have been crushed, had it been placed on that side. The evidence also showed that, had the ladder been long enough to reach beyond the top of the pulley, it could not have been crushed, although it might have been pulled against the pulley. The undisputed evidence showed that the plaintiff had no control over the ladders, and it was no part of his duty to make or repair them. He was an iron worker, while the ladders were made of wood. The ladder in use was made of wood. The upright pieces were 3 or 3½ inches wide, and 1 inch thick at the bottom, and tapered to the top, where it was 2 to 1¾ inches wide. It was 12 or 13 feet long. The shaft was 10 or 10½ feet above the floor of the shop. Plaintiff testified that he had notified the superintendent of the shop that, the furnace being so close to the pulley, it might scorch the belt and it would be impossible for him to put the belt on that side. The superintendent had said it would be there for a short while, and he would move it. Orders had been given several times to move the furnace, but for some reason the orders had been countermanded, though some work had been done in the way of laying foundations and erecting timbers for the shaft and for the purpose of moving this furnace. Plaintiff further testified that the pulley was revolving something like 100 revolutions

a minute; that he had no authority to stop the machinery; that he could only request that it be done; that sometimes it was stopped, and sometimes it was not, depending on the repairs that had to be made; that it was the custom to put on belts without stopping machinery, and that he had put this belt on frequently before; that with proper equipment there was not necessarily any danger in putting a belt on a revolving pulley; that there was some danger; that the danger was in becoming entangled in the pulley, but that he was not injured in that way; that he had never seen a ladder get caught in the pulley and crushed as that one was, and had never heard of it; that he avoided the danger of being entangled in the pulley, which was the danger he had in mind, and was the open danger.

C. H. Krauss, the superintendent, a witness for the defendant, testified that the plaintiff had authority, in case of a breakdown or in case of emergency, to stop the machinery or slow it down, and that the plaintiff had authority to make requisitions for a longer ladder if he needed one; in the event that it became necessary to put on a belt, and there was no ladder long enough, he had authority to make a requisition for a longer ladder; that the safe way to belt a revolving pulley is to slow the machinery, put on the belt, and then start it up; to let it come practically to a standstill; that he did not see the accident to the plaintiff, being in Pennsylvania at the time; that the safe way to belt a pulley is to slow it down almost to a standstill, then let it start up; that there were a good many machines in the shop, and to stop to put on the belt in question would stop every machine in the shop; that there were different dangers attending belting a revolving pulley; a man could throw himself down, or get entangled in the belt; that he never knew a man to get hurt, except by becoming en

tangled in the belt, except the plaintiff; that if the ladder extended above the pulley—that is, above the top—and was smooth, the pulley would rub up against it, and it could not get into the pulley standing on either side of the shaft; that anything above 20 or 25 revolutions a minute was a high rate to belt a pulley; that 300 or 400 revolutions a minute is a high rate of speed; that he did not know that the engine in the shop could be run so as to run this pulley 25 revolutions a minute; that he thought it could, but had never tested it; that it would take a man half· a minute or a minute to put on a belt.

The plaintiff, in rebuttal, testified that he knew the connection between the engine and the pulley; that the engine could not be slowed down enough to run the belt only 25 revolutions a minute, long enough to put on the belt, that he had orders to put the belt on, and was not authorized to stop the machinery. The plaintiff offered to prove that he had made the complaint to his superior, Mr. Clark, about the condition of the ladder, and had requested a longer one. The court sustained an objection to this question, and refused to allow the proof to be made, and to this action of the court the plaintiff excepted.

On this evidence, the court, at the request of the defendant in writing, charged the jury to find the issues in favor of the defendant. The plaintiff has prosecuted this appeal, and assigns as error the ruling of the court in sustaining a demurrer to the fourth, sixth, and eighth counts of the complaint, the sustaining of defendant's objection to the question propounded to the plaintiff as to the complaint made by him about ladders, and the giving of the affirmative charge in behalf of the defendant.

[Ritch v. Kilby Frog & Switch Co.]

KNOX, ACKER & BLACKMON, for appellant.—The court erred in giving the affirmative charge for the defendant.—*Daly v. Amer. Pr. Co.*, 150 Mass. 77; *Washington R. R. Co. v. McDade*, 135 U. S. 554. Counsel discuss the pleadings but without citation of authority.

WILLETT & WILLETT, for appellee.—This cause should be affirmed on authority of.—*Coosa M. Co. v. Williams*, 133 Ala. 606.

MAYFIELD, J.—Counts 4, 5, 6, and 8 were each bad, in that they showed no causal connection between the defect or the negligence complained of and the injury suffered; that is, they complained of certain defects as to the location of the furnace, etc., and negligence in so locating it, and yet failed to show that, if this defect complained of had any connection with the injury complained of, it was the indirect and remote, and not the direct or proximate, cause, which, of course, is necessary to state a good cause of action. None of these counts sufficiently showed a duty owed by defendant, to plaintiff or to any of its employes, to change the location of the furnace as complained of.

Moreover, a fault of each of these counts is that the averments of each show that one defect or negligent act is alleged as the basis for the cause of action, yet it is affirmatively shown by the allegations of each count that the injury complained of was not proximately caused by this particular defect or negligence relied upon. The demurrers went to this defect as to each of the counts, and were therefore properly sustained.— *Gross' Case*, 97 Ala. 221, 12 South. 36; *Vail's Case*, 142 Ala. 135, 38 South. 124, 110 Am. St. Rep. 23; Dresser's Employer's Liability, p. 422.

The case was tried upon counts 1, 2, 3, and 7. The first three counts each declared under subdivision 1 of the employer's liability act (Code 1907, § 3910), as for a defective ladder generally, that it was too short, and that it was too weak; the seventh, under subdivision 2, as for negligence of the superintendent, while in the exercise of superintendence, in locating a furnace, so that it necessitated plaintiff to mount a ladder on the wrong side of the shaft, toward which it was revolving. The general issue and pleas of contributory negligence and assumption of risk were filed to each of these counts, and the trial was had upon these issues, and the court gave the general affirmative charge for the defendant, which necessarily raises the most serious and important question for review on this appeal.

We are of the opinion that the trial court was correct in giving the affirmative charge requested for the defendant, under all the evidence as applied to the issues raised by the pleadings and the law applicable to such cases. Whatever may be said as to the sufficiency of the complaint, and each count thereof, and as to the pleas as to which demurrers were overruled, some of these pleas, which were answers to each count, were proven by all the evidence. Even the plaintiff's evidence established the truth of some of these pleas.

All the evidence conclusively showed that plaintiff had assumed the risk by virtue of his employment, and that his injury was incident to the risk he assumed; that the injury was the result of an accident naturally incident to the employment, if performed in the manner in which plaintiff voluntarily performed this. All the evidence, including that of plaintiff himself, shows that the injury was directly and proximately caused by his own negligence, and that, if any negligence for which defendant was liable was shown, it was shown

[Ritch v. Kilby Frog & Switch Co.]

not to have been the direct or proximate cause of the injury, but the remote—if it had anything at all to do with it. The evidence conclusively shows that the plaintiff was injured while attempting to replace a belt on a pulley from which it had slipped off, and while it was revolving very fast, from 100 to 200 revolutions per minute. All the evidence shows that this act was necessarily attended with more or less danger. Even the plaintiff himself so testified; and it is a fact which, it seems, everybody knows, that to thus attempt this dangerous act was negligence. As to this the evidence leaves no room for doubt, and in the absence of wanton or subsequent negligence on the part of defendant, of course, there could and should be no recovery.

There is also another principle of law which, applied to the evidence and issues of this case, will prevent a recovery by the plaintiff. The evidence without conflict shows that the safer way to belt the pulley in question was to slow down the movement of the machinery and then replace the belt, instead of attempting to replace it while the machinery was running at full speed. It also appears that plaintiff knew of these two modes, and well knew that the latter was safer and less dangerous than the former; yet he, with full knowledge of all the facts and with 17 years' experience in the business, chose the more dangerous mode of performing the work. It was no excuse to say that he had no absolute authority to order the machinery stopped or slowed down, to perform this act. He did have the right, and it was his duty, to request it to be done, and then, if his request had been refused, there might be some show or color of excuse for the attempt to put on the band while the pulley was revolving so fast; but surely he cannot excuse himself after his failure to make the request or to attempt to have the machinery slowed down.

The whole truth is (which is shown by the evidence) the plaintiff was an expert at this business, and thought he could put the band on without injury under any circumstances, and, emboldened by his long experience and practice in the matter, he attempted what an ordinarily prudent man would not have essayed, and was injured in the attempt. It was the unexpected that happened. He thought his practice, knowledge, and dexterity would avoid the usual danger attending the putting on of the belt under the existing circumstances. But the unexpected happened, "the gun was loaded," and he was injured solely as the result of his own risk or negligence. The plaintiff thus sums up the whole matter in his re-direct examination: "The danger in attempting to belt a pulley while the shaft is in motion is the danger of getting entangled in the pulley. I was not injured in that way. I never saw a ladder get caught in the pulley and crushed in as this one was. I never heard of one. I avoided the danger of being entangled in the pulley. That was the danger I had in mind when I went up there, and was the open danger."

The case of *Coosa Mfg. Co. v. Williams*, 133 Ala. 606, 32 South. 232, is decisive of the rights of plaintiff to recover in this case. The facts, of course, in the two cases are not identical; but they are so nearly alike that the principles of law announced in that case preclude any right to a recovery under the undisputed facts in this case. While no new doctrines are announced in that case, they being as old as the law of master and servant, yet the doctrines are there forcefully and tersely expressed, and applied to facts very similar to the facts of this case. We can do no better here than to quote what McClellan, C. J., said in that case, only changing the names of the parties, and to say it must be applied to the facts in this case, and that, when so

applied, it supports the charge of the court and the verdict of the jury: "The plaintiff was an experienced millman. He had worked for a long time in the mill in which his injuries were received, and at the time of receiving them he was, and had for months been, the foreman of that section of the mill in which he was injured. He knew all about belting pulleys in motion. If there was danger in attempting to belt the pulley he was engaged in belting at the time of his injury, while it was in motion, he knew of that danger, its character and extent, fully as well as Clark, defendant's superintendent, and that danger, certainly to a man of his acknowledged experience and familiarity with the matter in hand and the environment, was an obvious danger. So that, on the assumption upon which we are now proceeding, the plaintiff was under no duty to subject himself to this danger at the command of Clark, the superintendent, and his doing so was want of due care and and prudence—such negligence, contributing to his own hurt, as to constitute a full defense against the alleged negligence of Clark in directing him to belt the revolving pulley."

It is unnecessary to consider other rulings of the court upon the evidence, for the reason that it clearly appears that under all the evidence admitted, offered, or excluded, and under all phases of it, the general affirmative charge was properly given, as requested for defendant.

The judgment of the circuit court is affirmed.

Affirmed.

SIMPSON, ANDERSON, and McCLELLAN, JJ., concur.