*C. E. Sutton,* for plaintiffs in error.
*Colley & Colley,* contra.

6041. ROY *v.* GEORGIA RAILROAD AND BANKING COMPANY *et al.*

BROYLES, J. 1. The suit against all the defendant railroad companies was properly brought in Morgan county. The injury having occurred in that county, and the Georgia Railroad & Banking Company having

an office and agency there, that company was suable in that county only, and any judgment rendered against it in any other county would have been utterly void.   Civil Code (1910), § 2798; *Brooke* v. *L. & N. R. Co.*, *3 Ga. App.* 492 (60 S. E. 218), and cases therein cited.   The non-resident defendants being suable in Georgia, the suit against. them was properly brought in Morgan county, service being perfected on them by second originals.   See *Coakley* v. *Southern Ry. Co.*, 120 *Ga.* 960 (48 S. E. 372) ; *Reeves* v. *Southern Ry. Co.*, 121 *Ga.* 561 (49 S. E. 674, 70 L. R. A. 513, 2 Ann. Cas. 207) ; *Southern Ry. Co.* v. *Grizzle*, 124 *Ga.* 735 (53 S. E. 244, 110 Am. St. R. 191) ; *Georgia Railroad Co.* v. *Bennefield*, 138 *Ga.* 670 (75 S. E. 981) ; *Bracewell* v. *Southern Ry. Co.*, 134 *Ga.* 537 (68 S. E. 98).   Under the decisions cited above, the fact that some of the defendant companies had no railroad and no agent in Morgan county is immaterial.

2. A railroad company which is a common carrier, if either the initial or the ultimate carrier, transporting a car containing freight, owes a duty to the consignee or his servant, when either the consignee or his servant is engaged in the business of unloading the car after it has arrived at its destination.   This duty is to see that the car and its devices for unloading it are reasonably safe for such purpose.   This is true although the journey of the car is ended and it has been switched upon a side-track belonging to the consignee.   *S. F. & W. Ry. Co.* v. *Booth*, 98 *Ga.* 20 (25 S. E. 928) ; *Sykes* v. *St. Louis Railroad*, 178 Mo. 693 (77 S. W. 723).

(a) The duty of an initial carrier which receives freight to be ultimately delivered by other connecting carriers to a consignee whose servants are to unload the car is to exercise ordinary care to see that the car and its appliances for unloading it are in a reasonably safe condition, so that such servants, while themselves exercising ordinary care, can proceed with the work of unloading the car with reasonable safety.   *Sykes* v. *St. Louis Railroad, supra.*

(b) It is the duty of the ultimate carrier to inspect such a car and ascertain whether it and its unloading devices are in .a reasonably safe condition, and if, on examination, the car or any part of its unloading appliances is found to be dangerously defective, it is its duty to make the necessary repairs, or to notify the consignee of such dangerous defects.   In this case, though one of the dangerous defects of the car—the "bent link"—was covered over and concealed by the coal in the car, thus making it difficult for the ultimate carrier to discover it, the other dangerous defect—the worn and defective ratchet—was not so concealed, and it seems reasonable that its condition could have been discovered by the ultimate carrier, in the exercise of ordinary care.   *Sykes* v. *St. Louis Railroad, supra.*

(c) The duty of an intermediate carrier is to inspect the car received by it from another road, and to see that the car is in a reasonably safe condition to be received, transported, and delivered by it to the next connecting carrier; but it owes no duty to the consignee or his servant which would render it liable for an injury to either, caused by a defective car.   *Sykes* v. *St. Louis Railroad, supra*; *Ladd* v. *N. W. Rail-*

road Co., 193 Mass. 359 (79 N. E. 742, 9 L. R. A. (N. S.) 874, 9 Ann. Cas. 988, and note (d) on page 990). The mere fact that the defective car is owned by an intermediate carrier, which furnished it to another carrier, which latter carrier loaded the car and started it on its journey to the consignee, does not necessarily make the owner of the car liable for the injury to the consignee or his servant. Sykes *v.* St. Louis Railroad, supra. Where, however, as appears from the amendment in the instant case, the "car was originally put in traffic and furnished by the defendant Southern Railway Company [the owner of the car] *on the occasion in question*" (italics ours), it became the duty of that company (just as in the case of the initial carrier) to exercise ordinary care to see that the car and its unloading appliances were in a reasonably safe condition to be used by the consignee or his servants while unloading the car.

3. While some of the defendant companies may have been negligent in the discharge of the duties they owed to the deceased (a servant of the consignee), yet if the deceased neglected such precautions as common prudence demanded under all the circumstances, he was guilty of contributory negligence. It was his duty to exercise reasonable care, for his own protection and safety, in ascertaining for himself the condition of the car before he attempted to unload it; but whether he did exercise such care at the time of his injury was a question for the jury to determine. See Roddy *v.* Railroad Co., 104 Mo. 234 (15 S. W. 1112, 12 L. R. A. 746, 24 Am. St. R. 333).

4. In this case there is no presumption of negligence against the defendant companies. In fact, if there is any presumption at all, it is that the defendant companies are free from negligence until the contrary is shown. Likewise, however, the deceased is presumed to have been innocent of contributory negligence until the contrary is established. Sykes *v.* St. Louis Railroad, and Roddy *v.* Railroad Co., supra. Unless the petition shows upon its face that the plaintiff is guilty of contributory negligence, the petition upon this point is good as against general demurrer.

5. The petition did not set forth a cause of action against the Seaboard Air-Line Railway, an intermediate carrier, and the general demurrer filed by that defendant was properly sustained.

6. The petition set forth a cause of action against the Southern Railway Company, for the reasons stated above in paragraph 2 (c). A cause of action was also shown against the Virginia & Southwestern Railway Company and the Georgia Railroad & Banking Company, the initial and the ultimate carriers respectively, and the court erred in sustaining the general demurrers filed by these three defendants.

*Judgment affirmed in part, and reversed in part.*

DECIDED SEPTEMBER 9, 1915.

Action for damages; from city court of Madison—Judge Anderson. October 10, 1914.

The action was against the Georgia Railroad and Banking Com-

pany, the Seaboard Air-Line Railway, the Southern Railway Company, and the Virginia and Southwestern Railway Company. Each defendant demurred generally and specially, and the court sustained the demurrers and dismissed the petition.

The petition alleged: The Georgia Railroad and Banking Company is a corporation of this State, owning a railroad running from Atlanta to Augusta therein, and passing through the county of Morgan, wherein it has an agency and agent and place of business. The other defendants are railroad corporations chartered in other States, but each having an agency, an agent, and a place of doing business in Fulton county of this State. Petitioner is the mother of J. A. Roy, who was killed on September 11, 1913, at the age of thirty years. He was unmarried, and petitioner was at the time of his death wholly dependent on him, and he contributed to her support. He was at that time working at the Empire Cotton Oil Mill, at Madison, in Morgan county, where he was earning $1,800 per year. He was engaged in unloading a car of coal consigned to the Empire Cotton Oil Company at said oil-mill, marked "Southern 110038," and through the defective construction and condition of said car, without any fault on his part, was struck in the head and killed. He was at that time superintendent of the Empire Cotton Oil Company's plant at Madison, and it was his duty to supervise and control all mechanical operations at said mill, including the unloading of said car of coal. Said car was a very large one, having a capacity of 100,000 pounds, and was entirely full of coal. The construction of the trap-doors through which the coal was discharged therefrom, and of the fastenings of said doors, was peculiar and very dangerous, as appeared after the same was unloaded, though the same was not discovered by said Roy, and could not easily have been discovered by him while the coal was therein. A car of that construction was an entire novelty. The doors of said car, as afterwards appeared, were unusually large and took up the greater part of the floor of the car. They swung to the edge of the car and opened lengthwise, instead of across the car, as is usual. They were exceedingly heavy in themselves, unusually so, and, by reason of their size, covering almost the entire floor of the car with two sets of them, each set directly supported almost the entire weight of half said car of coal. Each set of said doors was, moreover, supported by a square axle

running through the car, carrying chains attached to the said doors. When said doors were fully drawn up, said chains had a bent link which fitted around the square axle, so that the doors would hang thereon without pulling the axle around, unless the same was started. To prevent its running off suddenly when so started, said axle had a toothed wheel on it, with a ratchet to drop in the teeth, so that it could turn off but one tooth at a time, unless the ratchet were held up so as to permit it. Said ratchet was unusual on coal cars, but the great size and weight, and the bent link operating as aforesaid, was unusual, was concealed from said Roy by the coal which was over it, and was unknown to him, though exceedingly dangerous. Said Roy, in unloading said car, knocked the ratchet up, releasing the toothed wheel. In ordinary cars this should have released the doors and enabled them to discharge the coal. Owing to said bent link, however, said doors did not move. Said Roy, believing that the chains were clogged by the coal, and ignorant of said bent link, directed his assistant, as is usual in such cases, to put a wrench on the projecting end of said axle, which projected outside the car, and put a piece of pipe on the handle thereof, to give greater power, and to start the chains and loosen them, placing the said ratchet down again to catch the toothed wheel should the same start. Said bent link suddenly became released, the entire weight of doors and coal came upon the axle, the ratchet wholly failed to hold the same, and the attendant of said Roy was hurled upward into the air, and said wrench and pipe, coming over, struck said Roy in the head, killing him; all in Morgan county. Though unnoticed by said Roy, said toothed wheel and ratchet were worn out and wholly insufficient to perform their function. Said ratchet would not catch in said tooth so as to hold at all. Even when no coal was on said doors when it was afterwards attempted to draw said doors up to place, as is required before coal cars are moved by railroads, said ratchet would not even hold up the empty door, and the same could not be raised with safety. Said car, in the condition and with the construction aforesaid, constituted a dangerous trap to one attempting to unload it, because said doors, of necessity, would hang fire in attempting to release them, one would naturally and usually seek to start them in the manner practiced by said Roy, and the condition of said ratchet and wheel and the extreme weight upon said doors, and of

the doors themselves, made it certain that catastrophe would follow. The defects in said car were not such as were observable casually, but were discoverable by an inspection for the purpose of discovering them, by a person familiar with coal cars of that type. While said Roy was ignorant of said conditions, no notice or direction or warning was given him, by notice upon the car, in the bill of lading, or otherwise, by the owners and furnishers of the car. Said coal car was originally put in traffic and furnished by the defendant Southern Railway Company on the occasion in question. It was taken by the Virginia and Southwestern Railway Company for loading, and, after being loaded, was delivered by it to said Southern Railway Company and transported to Atlanta. Petitioner is informed that at Atlanta said car was delivered to the Seaboard Air-Line Railway and by it delivered to Georgia Railroad and Banking Company, and by it the same was transported to Madison, Ga., and placed upon the side-track of said Empire Oil Mill for unloading. Said shipment was a car-load shipment, and it was the duty of the consignee to unload the same. It was the duty of the defendants, carriers of said car, to exercise reasonable care and diligence in inspecting said car and in providing a car for said transportation that would be safe to the consignee to unload. By reason of the unusual construction and danger of said car, it was the duty of said carriers to warn the persons unloading said cars and instruct them as to said dangers, and point out the safe manner of operating said car, if there was a safe way. It was the duty of said carriers to maintain in good order and safety all cars used by them in transportation, and to refuse to use any that were not in good order and safe to the consignee and its servants to unload. Said defendants wholly failed as aforesaid in the discharge of each of said duties in the transportation aforesaid, and therein were grossly negligent; and the said Roy was killed as a result of said negligence. His life had a present value of $26,000, and the defendants, in his homicide, injured and damaged the plaintiff in that sum.

*Percy Middlebrooks, Samuel H. Sibley,* for plaintiff.

*Joseph B. & Bryan Cumming, J. M. Hull Jr., E. W. Butler, F. C. Foster, F. C. Shackelford, Cobb & Erwin, McDaniel & Black, H. H. Skelton,* for defendants.