PITMAN v. YAZOO & M. V. R. Co.

(Division B.    Jan. 14, 1935.)

[158 So. 547.    No. 31524.]

Wynn, Hafter & Lake and **D. S. Strauss**, all of Green-ville, for appellant.

**Burch, Minor & McKay**, of Memphis, Tennessee, for appellee.

Argued orally by **D. S. Strauss** and **Jerome S. Hafter**, for appellant, and by **H. D. Minor**, for appellee.

**Anderson, J.**, delivered the opinion of the court.

Appellant brought this action against the Turner-Farber Lumber Company and appellee, Yazoo & Mississippi Valley Railroad Company, in the circuit court of Washington county to recover damages for an injury received by him while loading freight, as a servant of the lumber company, on one of appellee's flat cars, such injury alleged to have been caused by the defective condition of the car. Before the trial, the case was dismissed as to the lumber company; there followed a trial as to appellee, resulting in a directed verdict for it;

judgment was accordingly entered, from which judgment appellant prosecutes this appeal.

The Turner-Farber Lumber Company was located at Leland in this state. On November 15, 1933, it was dismantling a stave mill; the machinery connected with the mill was being loaded on one of appellee's flat cars for shipment to a point in Louisiana. Mr. Woody, a servant of the lumber company, was in charge of the loading and was directing the work; appellant was employed by him for the lumber company. A heavy piece of machinery referred to as a Dutch oven had been loaded on the flat car the previous day. Appellant had nothing to do with that loading, it was done by the servants of the lumber company—his fellow servants. The car was an ordinary flat car with sockets or pockets on each side for stakes or standards for the purpose of holding the load on the car. The car came without standards; these were furnished and put in place by other servants of the lumber company under direction of the lumber company. Appellant and others, under the direction of Woody, were loading a boiler which weighed about seven tons on the same car. From some cause the Dutch oven fell and seriously injured the appellant. The evidence tended to show that the fall, and subsequent injury, was caused by a defective standard on the car to which the oven was tied, and that the standard was defective, in that it was rotten or pithy.

The ground of the alleged negligence is that the car was improperly equipped, in that it was without secure standards. Appellee seeks to justify the directed verdict in its favor upon two grounds, namely, that the evidence failed to show any causal connection between the defective standard and the injury; and that under the consolidated freight classification No. 7 (southern classification No. 50), rule 30, adopted by the Interstate Commerce Commission, the lumber company—the shipper—

was required to furnish the standards. The second ground is well-founded; therefore the first disappears.

A certified copy of the commission's freight classification in question was introduced in evidence, being certified to by the Secretary of the Interstate Commerce Commission as being in force on November 13 and 14, 1933, on appellee's lines of railroad. This classification is a part of the tariffs of the appellee on file with the Interstate Commerce Commission. Rule No. 30 of the classification follows:

"Temporary Blocking Racks, Standards, Supports, etc.

"Unless otherwise provided: Section 1. (a) Temporary blocking, flooring or lining, racks, standards, stakes or similar bracing, dunnage or supports, not constituting a part of the car, when required to protect and make carload freight secure for shipment, must be furnished and installed by shipper at his expense.

" (b) Shippers must observe carrier's rules regulating safe loading of freight and protection of equipment. Freight in closed cars must be so loaded as to prevent any contact with car doors during transit, and weight of lading must be approximately the same on each of cars.

" (c) Bulkheads, partitions, temporary doors or door protection when required to protect or make bulk freight secure for shipment, must be furnished or installed by the shipper at his expense.

" (d) No allowance will be made for the weight of the material specified in section 1 (a), (b) & (c) and the transportation charge therefor shall be at the rate applicable on the freight which it accompanies.

"Allowance in Weight for Racks, etc., on Flat or Gondola Cars.

"Section 2. (a) An allowance of the actual weight, but not more than five hundred pounds per car, will be made for temporary blocking, standards, strips, stakes

or similar bracing, dunnage or supports used by shippers on flat or gondola cars when such material is required for safe transportation in the loading of carload freight, provided that in no case shall less than the established minimum carload weights be charged, and also provided that shipper must specify on shipping order the weight of the material used, otherwise no allowance will be made. If the weight of the temporary blocking, racks, standards, strips, stakes or similar bracing dunnage or supports is more than five hundred pounds per car the excess will be charged at the rate applicable to the lading of the car.

"No Allowance for Dunnage Used in Excess of a Full Carload.

"(b) No allowance in weight will be made for temporary blocking, racks, standards, strips, stakes or similar bracing, dunnage or supports used by shippers for part carloads in excess of full carload or carloads which are entitled under the provision of Rule 21 to the carload rate."

It is not necessary to resort to construction to ascertain the meaning of this rule. Section 1 (a) in plain and unmistakable terms provides that all temporary blocking, flooring, lining, racks, standards, stakes, or similar bracing, dunnage, or supports, not constituting a part of the car when required to protect and make carload freight secure for shipment, must be furnished and installed by the shipper at his expense. The rule is a reasonable one; we do not mean to intimate, however, that that is a question for the courts. In Anderson v. Southern Ry. Co. (C. C. A.), 20 F. (2d) 71, 73, there was involved the same type of car as the one here. It was loaded with telegraph poles, and in unloading it the consignee's foreman was killed. It was alleged that the injury was caused by the defective condition of the car, because of an insufficient number of standards and their inferior quality. In discussing the use of standards on such car, the

court used this language: "It is undisputed that, in the loading of poles of the character of those in this instance, new and different stakes have to be used with each load; the stakes being destroyed with the unloading. Under these circumstances it could hardly be held that an insufficient number of stakes, or stakes inferior in quality, could constitute a defect in the car itself. They were not parts of the car, and the car could be used for the purpose of hauling other classes of freight, with different stakes, or without any stakes whatever." This case is not referred to as having any bearing on the main question under discussion, but simply to show what the commission had in mind in adopting Rule No. 30.

The carrier is under no duty, but, on the contrary, is prohibited from rendering any service to the shipper, except in strict accord with its tariffs on file with the commission. Otherwise there would be a discrimination in favor of a particular shipper. The tariffs, rules, and regulations adopted by the commission are controlling in interstate shipments; they have the effect of law, and cannot be amended by oral agreement or otherwise. The contract of shipment between the shipper and carrier consists of the bill of lading, tariffs, schedules, and regulations of the commission. Rebates and favoritism to one class of shippers over another, or to one shipper over another of the same class, is prohibited; uniformity and equality is the principal groundwork of the commission. Mobile & Ohio R. R. Co. v. Jensen, 162 Miss. 741, 139 So. 840; Lamb-Fish Lumber Co. v. Y. & M. V. R. R. Co., 42 I. C. C. 470; Chicago, etc., R. R. Co. v. Kirby, 225 U. S. 155, 32 S. Ct. 648, 56 L. Ed. 1033, Ann. Cas. 1914A, 501; Cincinnati, etc., Ry. Co. v. Rankin, 241 U. S. 319, 36 S. Ct. 555, 60 L. Ed. 1022; Georgia, etc., Ry. Co. v. Blish Milling Co., 241 U. S. 190, 36 S. Ct. 541, 60 L. Ed. 948; Davis v. Henderson, 266 U. S. 92, 45 S. Ct. 24, 69 L. Ed. 182; Davis v. Cornwell, 264 U. S. 562, 44 S. Ct. 410, 68 L. Ed. 848. The car, therefore, was not defec-

tive for lack of standards when placed for loading. Appellee was under no duty to furnish standards, that was the duty of the shipper—the lumber company. The lumber company furnished and placed the standards, as it knew it must do. This was done by servants of the lumber company—appellant's fellow servants. One of the standards was faulty, resulting in appellant's injury. There can be no liability where there is no duty.

Appellant relies on the following cases to establish liability: Bushby v. N. Y., etc., R. R. Co., 107 N. Y. 374, 14 N. E. 407, 1 Am. St. Rep. 844; Pennsylvania R. R. Co. v. La Rue (C. C. A.), 81 F. 148; Port Blakely Mill Co. v. Garrett (C. C. A.), 97 F. 537; Lane Bros. Co. v. Couch (C. C. A.), 192 F. 509; Yazoo & M. V. R. R. Co. v. McCaskell, 118 Miss. 629, 79 So. 817. We do not think any of these cases are in point.

The Bushby case, was an action by the servant against his master, based on the failure of the latter to furnish him a safe place to work. A car of lumber was in the course of transportation; when the train rounded a curve at a rapid rate of speed, one of the standards broke, causing the lumber to slide off, carrying with it the plaintiff, who was riding thereon in the discharge of his duties. The court held that the standards were part of the car, and the railroad was due its employee the duty to furnish him a safe place to work, and to that end to inspect and see that the standards were fit for the purpose for which they were intended.

The duty of the carrier with reference to the shipper and his servants is one thing, and its duty with reference to its own servants and others is another and a very different thing. To the shipper and his servants, whose duty it is to furnish and place the standards, the carrier owes no duty to see that the standards are fit for their purposes; while as to the carrier's servants and others it is the duty of the carrier to exercise a reasonable inspection of the standards and replace any that are unfit.

In other words, as to the carrier's servants and others than the shipper and his servants, the carrier adopts the standards furnished by the shipper as its own.

The Port Blakely Mill Company case involved the death of a brakeman on the mill company's line of railroad. He was on a train which was hauling lumber cars; the lumber was kept in place by standards on the sides of the cars; as the train was rounding a left-hand curve, some of the standards on the right-hand side broke, and the lumber was thrown from the car to the ground and under the wheels of the train, causing the cars to be derailed, as a result of which the brakeman was thrown from the car on which he was working and was killed. The standards had been set by a servant of the carrier. The court held that it was no defense to the action for the brakeman's death that the defective standards had been supplied by a fellow servant; the master had simply failed to furnish his servant a safe place to work. In the Lane Brothers case, which was a contracting corporation engaged in building a railroad, Couch was in its employ as a fireman on a construction train. The train was hauling ties to a bridge site; these ties were eleven feet long, eleven inches wide, and eight inches thick, and were piled five tiers high on a forty-foot flat car. On each side of the car there were nine sockets for standards, but only five standards were placed on each side. The opposite standards were not tied or stayed to each other across the top, as they should have been. Around a curve two standards broke, causing the ties to fall; one of them caught Couch as he was standing in the gangway and killed him. Here again was a case of the failure of the master to furnish his servant a safe place to work. The McCaskell case is of the same character. A section hand, while standing near the railroad track, was injured by a cross-tie falling from a running train caused by a broken standard. The court held

it was a question for the jury whether the railroad company was negligent.

Appellant contends, however, that rule thirty of the freight classification has no application, because at the time of his injury he was engaged alone in a domestic transaction and not in interstate commerce. The evidence showed that no bill of lading had been issued for the shipment. The car was not moving, but standing still, being loaded. The argument is that interstate commerce did not begin until the freight started on its journey. The issuance of a bill of lading is not determinative of the question, nor is the character of the bill of lading issued. The courts look to practical considerations in determining the question and not to mere billing or the form of the contract. Foster-Fountain Packing Co. v. Haydel, 278 U. S. 1, 49 S. Ct. 1, 73 L. Ed. 147; Atlantic Coast Line R. R. Co. v. Standard Oil Co., 275 U. S. 257, 48 S. Ct. 107, 72 L. Ed. 270; United States v. Erie R. R. Co., 280 U. S. 98, 50 S. Ct. 51, 74 L. Ed. 187.

The doing of work which has for its immediate purpose the furthering of the conduct of interstate commerce constitutes employment in such commerce within the meaning of the Interstate Commerce Act (49 U. S. C. A., sec. 1 et. seq.). Kinzell v. Chicago, Milwaukee & St. Paul Ry. Co., 250 U. S. 130, 39 S. Ct. 412, 63 L. Ed. 893.

It is true that the car on which the freight was being loaded had not started on its journey, but a necessary thing was being done in order to start it—the loading of freight. The freight was on its journey from the ground to the car. We think that the loading as well as the unloading of the freight was just as much a movement in interstate commerce as its actual hauling by the carrier across state lines. Chassaniol v. City of Greenwood, 166 Miss. 848, 148 So. 781, affirmed by the Supreme Court of the United States in 291 U. S. 584, 54 S. Ct. 541, 78 L. Ed. 1004, is not in point. The cotton in that case

had not started on its journey, it had not been loaded on cars, nor was it being loaded on cars. It was in warehouses commingled with the general mass of cotton, and the cotton purchased for interstate commerce had not been segregated from the general mass.

We think it clear that the freight here involved, in the sense of the Interstate Commerce Act (49 U. S. C. A., sec. 1 et seq.), had started on its journey when it was being loaded on the car.

Affirmed.