169 So. 715

**EDWARDS v. SOUTHERN RY. CO. et al.**

**6 Div. 869.**

Supreme Court of Alabama.

June 11, 1936.

Rehearing Denied Oct. 8, 1936.

O. D. Street and Morrow & Longshore, all of Birmingham, for appellant.

Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellees.

THOMAS, Justice.

The suit was for personal injury and death resulting from the alleged wrongful act of the employer.

The trial was had on counts 1 to 5, inclusive, alleging defects in the loading of a car of poles, in that an insufficient number of standards was used to withstand the stress or superadded weight of the load to be held; and that the standards used were not of sufficient size and strength and the kind of material for such purpose.

The branch complaints were like the original.

The defendants interposed pleas of the general issue, contributory negligence, and the assumption of risk.

The several witnesses testified to the number, nature, material, and size of the stanchions employed in retaining the

poles on the car, and this evidence contained reasonable tendencies supporting the complaint. The witness Bass testified that such supports were small and insufficient; Mr. Graham, an experienced car inspector, gave as his judgment as an expert, that they were not of the proper size or strength, or sufficient number to sustain the load in question. This was material evidence of fact and of expert opinion for the jury to give such weight as it was worth, when considered with the other evidence of fact. Commonwealth Life Ins. Co. v. Harmon, 228 Ala. 377, 153 So. 755; Commonwealth Life Ins. Co. v. Brandon, 232 Ala. 265, 167 So. 723.

■ In the case of McGeever v. O'Byrne, 203 Ala. 266, 269, 82 So. 508, the phrase "assumption of risk" is fully considered, and it is there noted that the expression is sometimes loosely applied to cases where there was no contractual relation between the parties. The rule declared is, that it must be confined to cases where the plaintiff knew and appreciated the danger assumed, and with such knowledge and appreciation voluntarily put himself in the way of it. This is the rule that is followed in this jurisdiction. Louisville & N. R. Co. v. Parker, 223 Ala. 626, 636, 138 So. 231; Morgan Hill Paving Co. v. Fonville, 218 Ala. 566, 575, 119 So. 610; Dunklin v. Hanna, 229 Ala. 242, 156 So. 768.

The evidence tended to show that the deceased was previously employed as a transfer man or drayman; that this was about the first work he had done unloading poles. The witness Otwell testified in this connection, of the employment of deceased, the conversation he had with deceased, during the course of which he discussed, by way of suggestion, the proper way to unload a car properly packed, and warned deceased that it was "his job" and they "didn't want anybody to get killed or get hurt there."

The evidence showed the car was leaning at the top about a foot toward the south side when received and the unloading undertaken.

Bass testified that he was assisting deceased, and discussed with him the safest way to unload, and they decided to "cut it (the stanchions and wires) on the side next to the main line, which was the north side." While so engaged, the accident occurred.

On cross-examination the witness Otwell testified that if the car was leaning ten or twelve inches at the top, toward the south, he would not say it was safe to attempt to unload it in the manner he had suggested to deceased. He testified further as to this:

"We got to talking about the way to cut the wires, and I make a suggestion as to the way he should cut them. I made a suggestion as to the way I generally cut them. I don't remember the exact words I said to him about it. I explained to him that that was his job and we didn't want anybody to get killed, or get hurt there, and to do it the safest way, but as to the exact words, I don't know. We talked about it there for a few minutes. He was sitting down and the other fellow was skidding the poles away from there. That is about all that I can remember of that conversation. I told him that the way we had usually done it was first to notch the standard on the side you wanted the poles to go off on, and then the way we usually did it was to cut the middle strand on the same side where the notch was, and then to go around on the other side and cut the wire here (indicating). I did not tell him that if a car was leaning as much as ten or twelve inches—the load leaning that way—that we would go here and notch this standard here (indicating), and with the car leaning ten or twelve inches over the same way. No, Sir, I wouldn't do that myself, not if it didn't look safe. If that load of poles was leaning ten or twelve inches at the top, I wouldn't go here and notch these standards (indicating), half way through, and then cut those wires; I wouldn't have put myself in that position. No, Sir, I wouldn't have done it. No, Sir, I guess I wouldn't consider it safe."

Defendants offered evidence tending to show that the car was properly loaded and so proceeded in the shipment; that no defects, as indicated by plaintiff, were observable or existed. Such was the effect of the testimony of the employees of Brown & Sons Lumber Company, and of the Southern Railway Company's employees who inspected the car at the point of destination and testified that it was in proper condition for unloading.

It is apparent from such tendencies of evidence that there was conflict as to the nature, character, size, and affixation of the stanchions in the cuffs of the car—material facts of due shipment and delivery of the car in a reasonably safe condition for unloading.

The several counts aver the dangerous manner in which the car was loaded; the defects and insufficiencies of the supporting stanchions; that defendants knew, or by the exercise of reasonable diligence might have known, the manner employed rendered the unloading dangerous; that it was the duty of defendants to so inform the consignee of the condition of the car, which they failed to do, and such failure proximately resulted· in injury and death to plaintiff's intestate.

■ The shipper was under duty to load the car in a safe condition for receipt by the consignee or its servants; and if such was not the fact or condition, it was the shipper's duty to notify the consignee or its servants of such danger. A like duty rests upon the delivering carrier, if it has knowledge of a dangerous condition, or could know of it by the exercise of reasonable care.

Therefore, the pertinent questions of fact for determination by the jury under the pleading and evidence, were: (1) Whether the car was loaded in such a manner as to make it safe in transportation and delivery, and render its unloading safe to the consignee, or the servants of the consignee employed and under duty to receive and discharge such superimposed burden; (2) to determine whether each of the defendants, and, if so, which ones, knew of this dangerous condition of transportation and delivery, or by the exercise of reasonable diligence such danger could or would have been known; (3) whether or not there was failure to discharge the duty which the law ordinarily imposes to give due warning of a dangerous condition; (4) whether the failure of duty in that behalf proximately contributed to the death of plaintiff's intestate; and (5) whether his injury was the result of his own negligence or the risk he knowingly and voluntarily assumed.

■ The rules for giving or refusing general affirmative instructions need not be repeated. McMillan v. Aiken et al., 205 Ala. 35, 40, 88 So. 135; Jones et al. v. Bell, 201 Ala. 336, 77 So. 998; Commonwealth Life Ins. Co. v. Brandon (Ala.Sup.) 167 So. 723.[1] The scintilla rule prevails in this state. Penticost v. Massey, 202 Ala. 681, 81 So. 637; Cleveland Laundry Machinery Mfg. Co. v. Southern Steam Carpet Cleaning Co., 204 Ala. 297, 85 So. 535. The rule that obtains in federal courts in this connection does not apply in this jurisdiction.

Louisville & N. R. Co. v. Parker, 223 Ala. 626, 138 So. 231; A. B. Small Company v. Lamborn & Company, 267 U.S. 248, 45 S. Ct. 300, 69 L.Ed. 597.

The duties arising from omissions or acts of a shipper, and those arising from the respective co-operation by several common carriers for delivery of shipments at destination in which there is no injury to third persons in unloading the shipments, by reason of defective equipment in loading at the initial point, have been considered by the courts with varying results.

"In [the English case of] Elliott v. Hall, L.R. 15 Q.B.Div. 315, it was held that a colliery owner, who shipped coal by rail, in a car leased by him, to a firm, was liable to a servant of the latter, who was injured while unloading the car, owing to the existence of a worn pin, which constituted the fastening of a trap in the bottom of the car. Grove, J., said: 'It was clearly part of the contract for the sale of the coal to the plaintiff's employers, that it should be conveyed in a truck to the buyers, and it must necessarily have been contemplated that, when it arrived at its destination, the truck would be unloaded by the buyers' servants. I think that it is plain that under these circumstances a duty arose on the part of the defendant towards the plaintiff. If vendors of goods forward them to the purchasers, and for that purpose supply a truck or other means of conveyance for the carriage of the goods, and the goods are necessarily to be unloaded from such means of conveyance by the purchaser's servants, it seems to me perfectly clear that there is a duty on the part of the vendors towards those persons who necessarily will have to unload or otherwise deal with the goods to see that the truck or other means of conveyance is in good condition and repair so as not to be dangerous to such persons.'

"In Caledonian R. Co. v. Mulholland L. R.A.C.(1898) 216, Lord Shand significantly observed that the case before the court did not involve a trap, or an invitation to use a trap or a noxious instrument." Chicago, I. & L. R. Co. v. Pritchard, 168 Ind. 398, 79 N.E. 508, 509, 81 N.E. 78, 9 L.R.A. (N.S.) 861.

The foregoing will indicate the view of that court, and that the conveyance and loading be sent forward in good condition and repair, not in a condition dangerous to the persons engaged in receiving and unloading it.

In Roy v. Georgia R. & Banking Co. et al., 17 Ga.App. 34, 86 S.E. 328, authorities are collected to the effect that either the initial or the ultimate carrier, transporting a car containing freight, owes a duty to the consignee or his servant engaged in the business of unloading the car after its arrival, to see that the car and its devices for unloading are reasonably safe for such purpose; the further duty of the ultimate carrier being, to inspect such car and ascertain whether it and its unloading devices are in a reasonably safe condition, and if, upon examination, the car or any part of its unloading appliances is found to be dangerously defective, make the necessary repairs, or notify the consignee of such dangerous defects. Sykes v. St. Louis & San Francisco Railroad Company, 178 Mo. 693, 77 S.W. 723; Savannah, F. & W. Railway Co. v. Booth, 98 Ga. 20, 25 S.E. 928; 10 C.J. page 121, § 147; Corbett v. New York, etc., Co., 215 Mass. 435, 102 N.E. 648.

In Chicago, Indianapolis & Louisville Railway Company v. Pritchard, 168 Ind. 398, 79 N.E. 508, 510, 81 N.E. 78, 9 L.R.A. (N.S.) 862, the effect of the English and American cases, the views of text-writers and of the school are adverted to, saying:

"Mr. Smith, in his work on Negligence, seems to approve of the principle enunciated by the Master of the Rolls in Heaven v. Pender, L.R. 11 Q.B. 506 (Whittaker's Smith on Negligence, 13), while Shearman & Redfield characterize his opinion in that case as masterly. 1 Negligence (5th Ed.) § 116. See, also, 19 Harvard Law Revue 372. It appears to us that, reading the general propositions which are found in said opinion in connection with the limitations which are found therein, it appears, at least in the main, that the opinion correctly declares the law. Of course, it is the occupier or controller, rather than the lessor, who in general must respond to third persons for defects in property (Marrney v. Scott L.R.Q. B.D.(1899) 986; Webb's Pollock on Torts, 629), but we are of opinion that the lessor may be liable for their injury by such means where it can be said that the property was imminently dangerous to such persons and the circumstances were such that they should have admonished the lessor that there was such a possibility of failure to discover and repair the defect that, as an ordinarily prudent man, duly mindful of his duty towards others, he should have been prompted to have put the property in proper condition before parting with it."

And the question of proximate cause is treated as follows:

"This brings us to the question of proximate cause, viewed with reference to the omission of the shipper to examine the car. It is not enough that the furnishing of a defective car by the company was in the line of causation, or even that without carelessness on its part the accident would not have occurred. It does not follow, however, that the intervention of a responsible human agent, even if that agent was in a degree a negligent one, makes the original act the remote cause. Mr. Sutherland properly observes that: 'The test is to be found, not in the number of intervening events or agents, but in their character and in the natural and probable connection between the wrong done and the injurious consequences.' 1 Damages (3d Ed.) § 17. The primary act must have such a connection with the wrong that it stands in the relation of cause and effect, so that it can be said that it was the duty of the person committing such act to apprehend that injury might thereby occur to another. In this case the intervening cause was not a supervening cause; there was at the most on the part of the shipper only an omission to stay the injurious consequences of what had already been done. In these circumstances, if it can still be said that it was the duty of the company, in view of the imminence of the danger and the possibility that its dereliction would be overlooked by the shipper, to have apprehended that its act might lead to the injury of a third person and, as an ordinarily prudent person, to have guarded against it, then, within the modern authorities at least, its act was a proximate cause, since the case would be one in which there was an unbroken connection between the wrong and the injury. Billman v. Indianapolis, C. & L.R. Co., 76 Ind. 166, 40 Am.Rep. 230; Terre Haute & I. R. Co. v. Buck, 96 Ind. 346, 49 Am.Rep. 168; 1 Thompson, Commentaries on Negligence, §§ 52, 54–58, and cases cited. As stated by Shearman & Redfield on Negligence [vol. 1] § 34: 'If the negligent acts of two or more persons, all being culpable and responsible in law for their acts, do not concur in point of time, and the negligence of one only exposes the injured person to risk of injury in case the other should also be negligent, the liability of the person first in fault will depend upon the question whether the negligent act of the other was one which a man of ordinary experience and sagacity, acquainted

with all the circumstances, could reasonably anticipate or not. If such a person could have anticipated that the intervening act of negligence might, in a natural and ordinary sequence, follow the original act of negligence, the person first in fault is not released from liability by reason of the intervening negligence of another.' * *

"There are at least two well-considered cases in which it has been decided that a railroad company turning a defective car belonging to it over to another company for transit may properly be charged with negligence on account of an injury to a servant of the latter company, irrespective of the question whether the receiving company was guilty of negligence in failing to examine the car. Moon v. Northern P. R. Co., 46 Minn. 106, 48 N.W. 679, 24 Am.St. Rep. 194; Pennsylvania R. Co. v. Snyder, 55 Ohio St. 342, 45 N.E. 559, 60 Am.St.Rep. 700. It will be observed that in such a case as this the determination of what was the efficient cause, involving, as it does, subsidiary questions upon which the minds of men of ordinary intelligence might reasonably differ, must become, as the ultimate question of negligence may be, one to be submitted to the jury. Davis v. Mercer Lumber Co., 164 Ind. 413, 73 N.E. 899; Thompson, Commentaries on Negligence, §§ 161–164. The matter of proximate cause, while somewhat difficult clearly to put before juries, has in it no element which calls for the scholastic subtlety of the schoolman; in most cases an application of the doctrine only requires, after instructions concerning such of the general principles as the case involves, that the jurors should apply their every day judgment, as practical men, to ascertain whether there has been such a delinquency on the part of the defendant, uninterrupted by any supervening cause, that the act or omission ought justly to be held as an efficient cause of the wrong." 168 Ind. 398, 79 N.E. 508, 511, 81 N.E. 78, 9 L.R.A.(N.S.) 862, 863.

See, also, Ladd v. New York, New Haven & Hartford Railroad Company, 193 Mass. 359, 79 N.E. 742, 9 L.R.A.(N.S.) 874, 9 Ann.Cas. 988.

In this court the rule is generally declared, as follows:

" 'If an injury has resulted in consequence of a certain wrongful act or omission, but only through or by means of some intervening cause, from which last cause the injury followed as a direct and immediate consequence, the law will refer the damage to the last proximate cause, and refuse to trace it to that which was more remote.' Louisville & N. R. R. Co. v. Quick, 125 Ala. 553, 561, 562, 28 So. 14; Stanton v. Louisville & N. R. R. Co., 91 Ala. 382, 386, 387, 8 So. 798; Louisville & N. R. R. Co. v. Kelsey, 89 Ala. 287, 289, 290, 7 So. 648; Western Ry. of Alabama v. Mutch, 97 Ala. 194, 11 So. 894, 21 L.R.A. 316, 38 Am. St.Rep. 179; Thompson v. Louisville & N. R. R. Co., 91 Ala. 496, 500, 8 So. 406, 11 L. R.A. 146." Alabama G. S. R. R. Co. v. Vail, 142 Ala. 134, 141, 38 So. 124, 126, 110 Am.St.Rep. 23; Ritch v. Kilby Frog & Switch Co., 164 Ala. 131, 138, 51 So. 377; Birmingham Railway, Light & Power Co. v. Ely, 183 Ala. 382, 397, 62 So. 816; Jones v. Ripley Stave Co., 203 Ala. 60, 82 So. 20.

Southern Ry. Co. v. De Latour, Inc., 223 Ala. 245, 135 So. 187, was a suit by the consignee against the transportation company, involving damages to a shipment of turkeys. What is called the "Shippers Load and Count" and liability of the shipper were the phases of law discussed, and it was there held, that the "carrier is not liable for injury from improper packing where it is not apparent to carrier's ordinary observation that goods cannot thus be safely carried," and whose "agent was not chargeable with notice of overloading." McCarthy & Baldwin v. Louisville & Nashville Railroad Company, 102 Ala. 193, 14 So. 370, 48 Am.St.Rep. 29; Atlantic Coast Line R. R. Co. v. Rice, 169 Ala. 265, 52 So. 918, 921, 29 L.R.A.(N.S.) 1214, Ann.Cas. 1912B, 389.

The case of Pitman v. Yazoo & M. V. R. Co., 171 Miss. 799, 158 So. 547, discusses the duty of a shipper to furnish standards for flat cars in interstate commerce; held that the common carrier owed no duty to the shipper and his servants to see that the standards were fit for their purpose (Interstate Commerce Act, 49 U.S.C.A. § 1 et seq.); that the loading and unloading were as much a part of such movement of interstate commerce as its actual hauling by the carrier across state lines. (Chassanoil v. City of Greenwood, 166 Miss. 848, 148 So. 781; Chassaniol v. City of Greenwood, 291 U.S. 584, 54 S.Ct. 541, 78 L.Ed. 1004).

This being a shipment intrastate, it is not governed by this ruling.

In Southern Ry. Co. et al. v. Edwards, 44 F.(2d) 526, the Circuit Court of Appeals held that any risk attaching to the unloading of a car of poles by reason of a

70

visible condition was, as between employee and employer, assumed by the employee; that under the undisputed evidence the negligence of the deceased in unloading the poles caused or proximately contributed to his death, precluding recovery against the carrier or consignor; that whether there was or was not a practicable way of avoiding the danger that overtook him, the deceased was negligent in incurring a danger which was open and apparent, done with a full knowledge of the situation, and which he voluntarily dealt with and which visibly involved his peril. We conclude as to this phase of the evidence that it was without conflict, and showed that it was the negligence of the deceased that proximately caused or contributed to his injury and death. This result prevents the asserted right of recovery. Anderson et al. v. Southern R. Co. (C.C.A.) 20 F.(2d) 71; Illinois Central Ry. Co. v. Skaggs, 240 U.S. 66, 36 S.Ct. 249, 60 L.Ed. 528.

It results that the action of the trial court was free from error, and is affirmed.

Affirmed.

ANDERSON, C. J., and KNIGHT, J., concur.

BROWN, J., concurs in the result only, for reasons stated as follows:

BROWN, Justice (concurring specially).

I concur in the conclusion for the reason that neither the averments of the complaint nor the proof show that there was any defect in the car upon which the poles were loaded, and the carrier had nothing to do with the loading. If there was negligence on the part of the consignor in loading the poles without placing sufficient standards in the car to hold the load, this was merely a condition upon which the negligence of the plaintiff's intestate operated to produce his hurt. The averments and proof do not bring the case within the doctrine announced in Chicago, Indianapolis & Louisville Railway Company v. Pritchard, Adm'r, 168 Ind. 398, 79 N.E. 508, 81 N.E. 78, 9 L.R.A.(N.S.) 857, or Elliott v. Hall, L.R. 15 Q.B.Div. 315.

The case is controlled by the decision in Broslin v. Kansas City, Memphis & Birmingham Railroad Co., 114 Ala. 398, 21 So. 475, supporting the first headnote. It appears that plaintiff's intestate was an independent contractor of the consignee, and that the danger was open and obvious.