(38 South. 816.)

No. 15,466.

VINCENT & HAYNE v. YAZOO & M. V. R. CO.*

(May 22, 1905.)

### CARRIERS—FREIGHT IN SEALED CARS—CONNECTING CARRIERS—LIABILITY FOR INJURY.

1. A railroad company which receives, as a connecting carrier, outside of this state, cotton in bales, shipped in sealed cars which were in good condition, under through contracts to which it was no party, and which hauls such cars unopened, and in like good condition, to their place of destination, and there delivers the cotton to the consignee, cannot be held liable for the wet and dirty condition of such cotton outside and inside the bales when so delivered.

2. Act No. 93 of 1888 in terms exempts from its provisions "freight received, in sealed cars, from roads outside of this state," and the exemption is none the less applicable because the delivering and receiving carriers operate within as well as without this state.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by Vincent & Hayne against the Yazoo & Mississippi Valley Railroad Company. Judgment for plaintiffs, and defendant appeals. Reversed.

Gustave Lemle and Hunter Collins Leake (J. M. Dickinson, of counsel), for appellant. Branch Knox Miller, for appellees.

---

*Rehearing denied June 19, 1905.

### Statement of the Case.

MONROE, J. Plaintiffs bring this suit against the delivering carrier for $2,104.99 as the loss resulting from the damaged condition, when delivered, of certain lots of cotton shipped from Homer and Ruston, La., and Magnolia, Ark., to New Orleans. They allege that the cotton was in good order when shipped, that through bills of lading were issued for it as in that condition, that drafts were drawn on and paid by them on the faith of said bills, and that it was delivered in bad order; and they pray for judgment.

Defendant, for answer, alleges that it received the cotton in question from the Louisiana & Northwestern and the Arkansas Southern Railroad Companies, in sealed cars, for transportation to New Orleans, and transported it in said cars to its place of destination, and there unloaded and delivered it, under sheds, to the plaintiffs, on presentation of the bills of lading properly indorsed; that said companies are connecting carriers, and that under the Constitution and laws of this state the defendant was obliged to receive and handle said cars, and is not liable for damages sustained by the cotton therein contained before such receipt; and it specially denies that any damage was thereafter sustained. Defendant further denies that it is bound by the bills of lading issued by said connecting carriers, and alleges that, if it were so bound, said bills provide that the carrier in whose possession the property may be when damaged shall alone be liable for such damage. The defendant also pleads the prescription of one year, and there is a further defense set up, which was subsequently waived, and need not be considered.

The record contains an agreement, which we quote and summarize as follows, to wit:

"It is agreed that this case shall be submitted on the following admissions and such other evidence as either party may desire to introduce

when the case is called for trial in open court. Both plaintiff and defendant do hereby make the following admissions, to wit."

Here follow the admissions: (1) That Hermann Loeb, upon certain dates, shipped, by the Louisiana & Northwestern Railroad Company (otherwise herein called the "L. & N. W. R. Co."), and by the Arkansas Southern Railroad Company (otherwise herein called the "A. S. R. Co."), from Homer and Ruston, La., and Magnolia, Ark., certain specified lots of cotton, which were the property of plaintiffs, and that the shipments "were made to order notify Vincent & Hayne, New Orleans, La."

(2) That part of the cotton was shipped by the L. & N. W. R. Co. under bills of lading similar to Bill A, annexed, and that the defendant "was no party to the said contract and had no knowledge thereof."

(3) That part of the cotton was shipped by the A. S. R. Co. under bills of lading similar to the Bill B, annexed, and that the defendant "was no party to the said contract and had no knowledge thereof."

(4) That the lines of railway either owned or operated by the L. & N. W. R. Co. do not extend from Magnolia, Ark., to New Orleans, La.

(5) That the lines of railway either owned or operated by the A. S. R. Co. do not extend from Ruston, La., to New Orleans, La.

(6) That it was necessary for both said companies, in order to carry out their contracts to transport cotton to New Orleans, to deliver such cotton en route to some other connecting carrier or carriers whose lines extend to that city.

(7) That said companies delivered the cotton in question at a point en route to the Vicksburg, Shreveport & Pacific Railroad Company (otherwise herein called the "V. S. & P. R. Co."), which company delivered it, in the same box cars in which it was originally loaded, to defendant, whose lines extend from said point to New Orleans, and

who at that time paid all charges and freight due thereon; and that defendant transported it to New Orleans, La., in the cars in which it was received by it.

(8) That the cars in which the cotton was loaded and transported were in good order and condition, and the doors and windows properly sealed; that the seals were in the same condition at the time the cars were unloaded at New Orleans as when originally placed; "and that the doors and windows of the cars were not opened en route."

(9) That the defendant delivered the cotton within a reasonable time after its receipt, and from the same cars in which it was brought to New Orleans.

(10) That the L. & N. W. R. Co. and the A. S. R. Co. are common carriers doing business in Louisiana; that the lines of each extend from a point in Arkansas to Homer and Ruston, in Louisiana, at which last-mentioned points the cotton in question was delivered to the V. S. & P. R. Co.; that the V. S. & P. R. Co. is a common carrier which owns and operates a road from Homer and Ruston, La., to Vicksburg, Miss., at which latter point said cotton was delivered to defendant; and that defendant owns and operates a road from Vicksburg, through Mississippi and Louisiana, to New Orleans, and was a common carrier doing business in Louisiana at the time of the transaction out of which this litigation arises.

The bills of lading issued by the A. S. R. Co. contain the following, among other, stipulations, to wit:

"And it is further especially understood that, for all loss or damage occurring in the transit of the said cotton, the legal remedy shall be against the particular carrier, only, in whose custody the cotton may actually be at the time of the happening thereof."

The bills of lading issued by the L. & N. W. R. Co. stipulate that the company shall be liable only for damages received by property whilst on its own lines.

M. L. Morrison, examined on behalf of

plaintiffs, testifies that drafts drawn by the shipper for the price of the cotton in question were paid by plaintiffs on presentation with bills of lading attached; that the payments were made on the faith of the recitals contained in the bills of lading that the cotton had been shipped in apparent good order, and that they would not otherwise have been made.

"It is admitted by counsel for the defendant that a portion of the cotton described in the petition, at the time it was unloaded from the cars at New Orleans, was damaged or injured by wet and dirt, deteriorating its value to the extent of $2,025."

P. F. Woods testifies that the cotton in question (with the exception of 100 bales, which he did not see) was in bad order when received. There was judgment in the court a qua in favor of plaintiff for $2,104.99, with interest, as prayed for, and defendant has appealed.

### Opinion.

It is admitted that the cotton in question was received by the Louisiana & Northwestern and by the Arkansas Southern Railroad Companies under contracts made in Louisiana and Arkansas, to which the defendant was no party, and of which it had no knowledge; that it was delivered by those companies to the V. S. & P. R. R. Co., and by that company, at Vicksburg, Miss., in the same box cars in which it was originally loaded, to the defendant, who then paid the freight and charges thereon; and that it was delivered by the defendant within a reasonable time, from the same cars, to the plaintiffs in New Orleans.

It is further admitted:

"That the said cars in which the said cotton was loaded and transported to New Orleans were in good order and condition, and the doors and windows properly sealed; that the seals were in the same condition at the time the cars were unloaded at New Orleans as when originally placed; and that the doors and windows of the cars were not opened en route."

These admissions preclude, alike, the assumption that the receiving carriers acted as the agents of the defendant and the possibility that the cotton was damaged whilst in the latter's possession. They also preclude the idea that the defendant knew, or could have known, the condition of the cotton at the moment of, or at any time preceding, its receipt; and it is neither asserted nor shown that it has ever committed itself upon the subject. Its connection with the cotton began at Vicksburg, when it received from the V. S. & P. R. R. Co., under a contract entered into at that time, certain cars, which were in good order, which were sealed, the contents of which were therefore unknown, and which it undertook to haul to New Orleans; and it terminated that connection and executed that contract by hauling the cars within a reasonable time, and in the same good order in which it had received them, to the destination agreed on, and there delivering the cotton which, as a matter of fact, they contained, to the plaintiffs. Conceding, arguendo, that because the initial carrier receipted for the cotton as in good order it must be presumed that it was delivered in good order to the second carrier, and by the second carrier in like good order to the defendant, and conceding that to rebut such presumption, so far as it is concerned, the defendant should, under ordinary circumstances, prove that the damage complained of was not sustained whilst the cotton was in its possession, the necessity for such proof is obviated in the instant case by the admission that the cars containing the cotton were delivered by the defendant in the condition in which they were received, there being no suggestion, much less proof, that a bale of cotton can become wet and dirty, outside and inside, whilst being transported in sealed box cars that are and remain in good order and condition. There may be, no doubt, a joint arrangement between connecting lines whereby each becomes the agent of the other in undertaking continuous transportation of goods, or there may be a traffic arrange-

114 La.—33

ment and an agreement for the division of freight from which no such mutual agency results, and by reason of which the connecting carriers become the agents of the initial carrier, and the latter may be sued on the contract, no matter in whose hands the goods are damaged. The American rule is said to be that the liability of the first carrier, in the absence of any contract to the contrary, terminates when he transports the goods to the end of his line and delivers them to a connecting carrier to be taken to their destination, each carrier being liable to the owner of the goods for injury thereto in the course of transportation over his line. 6 Cyc. 480–490.

It must not be overlooked that in this case it is admitted that the defendant was no party to, and knew nothing of, the contracts under which the cotton was shipped, and, in view of the further admission that the cars containing the cotton were sealed, and were delivered, as received, in good order, unopened, and within a reasonable time, we can find no basis in the general law applicable to the subject upon which to hold the defendant liable for the condition of their contents. Act No. 93 of 1888, to which the counsel for plaintiff refers, exempts from its provisions cases "of freight received in sealed cars from other roads outside of this state," and the exemption is none the less applicable because the delivering and receiving carriers operate within as well as without this state. The provisions of article 271 of the Constitution (to which counsel for the defendant refer), making it obligatory upon railroad companies to receive passengers, tonnage, and cars from connecting roads, are not intended to apply to operations in other states, and have no immediate bearing upon the issues here presented.

For the reasons assigned it is ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that the demand of the plaintiffs be rejected, at their cost in both courts.