ILLINOIS CENTRAL RAILROAD COMPANY *v.* CRAWFORD

No. 42215 April 16, 1962 140 So. 2d 90

July 10, 1962 143 So. 2d 427

*Sillers & Roberts,* Rosedale; *Joseph H. Wright, John W. Freels, Wence F. Cerne,* Chicago, Ill., for appellant.

*Jacobs, Griffith & Hatcher,* Cleveland, for appellee.

McGehee, C. J.

The appellee, Carl M. Crawford, brought this suit in the Circuit Court of Bolivar County, Mississippi, seeking to recover damages for personal injuries received on September 18, 1959, at Inverness, Mississippi. The suit was against the Fernwood Industries, a Mississippi corporation, located at Fernwood in Pike County, Mississippi, and against the Mississippi Power and Light Company, a Florida corporation, and the appellant, Illinois Central Railroad Company, an Illinois corporation.

At the beginning of the trial the plaintiff stated that he had settled with the Mississippi Power and Light Company for the sum of $1,000, and the suit was dismissed as to said defendant at the request of the plaintiff and by order of the court. The trial proceeded against the other defendants, Fernwood Industries and the Illinois Central Railroad Company, and a verdict was rendered against the said two defendants for the sum of $17,000. Thereafter the Fernwood Industries settled its part of the judgment by a payment of $8,000 to the plaintiff and this appeal is by the Illinois Central Railroad Company alone.

The declaration alleged that the Fernwood Industries processed and shipped creosoted poles; that the defendant railroad company transported such poles for hire to their point of destination on the railroad and that the Mississippi Power and Light Company was the purchaser of said poles at the point of destination. It was further alleged that the transmission poles were loaded on September 9, 1959, at Fernwood, Mississippi; on two

flatcars and that there were thirty of such poles shipped to the Mississippi Power and Light Company at Inverness, Mississippi. Twenty-two of these creosoted poles were seventy feet in length and the remaining eight of them were seventy-five feet in length.

The declaration further alleged that the waybill covering this shipment was issued by the Fernwood, Columbia and Gulf Railroad, not a party to this suit, showing the routing, and this waybill was introduced in evidence. The proof disclosed that the poles were caused to be loaded by the Fernwood Industries and were transported a short distance by the Fernwood, Columbia and Gulf Railroad and delivered to the appellant Illinois Central Railroad Company. When the load of poles arrived at the yards of Illinois Central in Jackson, Mississippi, it was inspected and found that the two bands at the top of the two inside stakes had slipped out of the seal, allowing the north end of the poles to lean westward. A dragline and boom or a derrick were used to straighten the load, and new bands were applied in order that the load of poles might be safely transported to its destination. The adjustment of the load was made for the purpose of making the load suitable for transportation. After leaving Jackson the load was transported 123 miles to Inverness.

The consignee, the Mississippi Power and Light Company, whose duty it was to unload the poles at their destination, had hired Mr. Meredith to unload them. Meredith, like the plaintiff, was an operator of heavy equipment. The poles were estimated to weigh 140,000 pounds.

Before attempting to unload the poles, the load was standing on a spur track on the east side of and parallel to the main line of the railroad with telegraph poles between the tracks. A telegraph pole was near the northwest corner of the load. Those present at the site were the plaintiff, Carl M. Crawford, his employer, Mr. Mere-

dith, Mr. Sykes, representing the Mississippi Power and Light Company and a Mr. Fulton, another employee of Meredith. No representative of the appellant, Illinois Central Railroad Company was present. All four of the above-named gentlemen examined the load by walking around the flatcars and looking at the load. Their inspection disclosed nothing objectional or dangerous.

Before cutting any bands that encircled the load of poles, the four men present placed additional stakes on the north end of the load on the west side to protect the telegraph pole against the possibility of becoming damaged. Mr. Meredith, the employer of the plaintiff, had planned to pull the bands loose by using the dragline and boom which the plaintiff was operating. The proof discloses that the plaintiff knew that the unloading could have been accomplished in this manner. However, Mr. Sykes of the Mississippi Power and Light Company instructed that the bands around the poles be cut by hand, in order to safeguard the telegraph pole from damage.

Following the instructions of Mr. Sykes as to the manner of unloading, Mr. Meredith cut the bands on the top of the north end of the load, and Mr. Fulton was also on top of the load and he testified that the poles shifted when the bands were first cut. Mr. Meredith also testified that there was some shift in the load at the time, and that he knew that it "wasn't exactly right". Thereafter Meredith and Fulton left the top of the load and the plaintiff, who had requested that the ax be thrown to him, commenced cutting the bands at the south end of the load. When he cut the bands from around the stakes on the south end of the load, and which bands were holding the load of poles on the flatcar, the poles rolled off the car, injuring the plaintiff.

We have carefully considered all of the testimony in this three volume record together with the rules and regulations of the Association of American Railroads

which were introduced in evidence and which we understand to impose on the shipper or at least the initial carrier, in this instance the Fernwood, Columbia and Gulf Railroad, the duty of so loading the poles that they can be safely transported to the point of destination and there safely unloaded, and which rules and regulations also impose upon the consignee the duty of unloading the poles after the same have been safely transported to the point of destination.

The delivering carrier was entitled to assume that those unloading the poles would exercise reasonable care in doing so. United States Steel Corp. v. McCraney, (5th Cir.) 257 F. 2d 457 and Nashville Bridge Co. v. Ritch, (5th Cir.), 276 F. 2d 171. See also American Creosote Works of Louisiana v. Harp, 215 Miss. 5, 60 So. 2d 514.

We are of the opinion that the method by which Mr. Sykes required the poles to be unloaded, and the act of the plaintiff in taking the ax and cutting into the bands which encircled the load of poles and which were for the purpose of holding the poles together in a pile on the flatcars, were the two contributing and proximate causes of the plaintiff's injuries. We fail to find in the record any evidence of negligence on the part of the appellant, Illinois Central Railroad Company, that either caused or contributed to the plaintiff's injuries, but that his injury was due solely to the method which Mr. Skyes required to be employed for unloading the poles and the act of the plaintiff in cutting the bands loose instead of using the dragline and boom as Mr. Meredith had originally planned. The request for a directed verdict in favor of the defendant, Illinois Central Railroad Company, should have been granted.

Reversed and judgment here for appellant.

*Kyle, Gillespie, Rodgers* and *Jones, JJ.*, concur.

RODGERS, J.

## ON SUGGESTION OF ERROR

The appellee complains that this Court said in the original opinion rendered April 16, 1962, and reported in 244 Miss. 300, 140 So. 2d 90, that, ''We fail to find in the record any evidence of negligence on the part of appellant, Illinois Central Railroad Company, that either caused or contributed to the plaintiff's injuries'', and that the directed verdict requested by the defendant in the trial court should have been granted. The appellee cites the case of Williamson v. Inzer, 239 Miss. 707, 125 So. 2d 77, in which the Court called attention to the following rule: ''When at the conclusion of plaintiff's case a motion is made to exclude the evidence and direct a verdict for defendant, the court must look solely to the testimony in behalf of plaintiff and accept that testimony as true; and if the facts testified to, along with reasonable inferences which could be drawn therefrom, would support a verdict for plaintiff, the directed verdict should not be given.''

The appellee argues that if there were any negligence shown by the evidence on the part of the Illinois Central Railroad Company, the case should have been submitted to the jury under the rule in the Williamson case, supra. It is said that the Railroad Company negligently adjusted the load of poles; that such negligence contributed to the injury of the appellee, and therefore the verdict of the jury in favor of appellee should not be set aside.

The appellee again points out, that the poles were not properly loaded by the shipper, so as to comply with the rules of the Association of American Railroads which were promulgated for the proper loading of forest products on open top cars; that the freight had been improperly ''sealed'' and that the poles had ''slipped seal.'' It is said that the negligence on the part of the

shipper "triggered the later events." It is again pointed out that when cars reached Jackson the load was in "bad order" and that it was necessary for the Railroad Company to "correct and adjust the load"; that in correcting the load the poles were pushed eastward, until the load was "straight again" and that after moving the load out on the main track it was necessary to return it to a sidetrack to again "adjust the load." It is pointed out that the Railroad again adjusted the load and that it put a metal band around the north end of the load and made it taut, so that the poles were "bunched" in a "bundle" and pulled "close together in a tight ball"; that the metal band was "real tight". It is asserted that such procedure was not proper because it destroyed the "nesting" of the poles, and that the weight of the load was against the sides of the stakes instead of downward against the bed of the cars; that the tight metal band tended to make the poles spread on the south end of the poles so as to cause pressure against the sides of the load. It is also pointed out that the load of poles had spread out at that top of the load and was leaning against the "green saplings." The appellee deducts from this statement of facts that the Railroad Company was negligent, and concludes that such negligence proximately contributed to the hurt and injury of the appellee.

## I

The appellee has cited the case of American Creosote Works of Louisiana v. Harp, 215 Miss. 5, 60 So. 2d 514, as authority on the question of contributory negligence. In that case the employee of a consignee cut wires and iron bands on a load of poles at the direction of the foreman for consignee. When the last band had been severed the standards broks off at the cuffs and the load of poles rolled off the flat car and injured the servant of consignee. The Court held in that case that, under

the facts presented, the alleged negligence of the shipper was a question for the jury. We think the Court was correct in its holding in the Harp case, supra. The shipper cannot, in effect, set a trap and avoid liability on the ground that the shipper had no contractual relation with the servant of consignee.

A custom has grown up in the transportation business, and is now accepted as a general rule of law, whereby the carrier usually loads all inanimate or ordinary freight tendered in less than car load lots, while the consignor loads in all cases where, for his convenience, the car is placed at his warehouse, or public tracks. The unloading of ordinary freight, is also governed by the same general rules. 9 Am. Jur., Carriers, Sec. 465, p. 701.

It is now a well-established rule that a shipper who negligently loads a flat car is liable in damages to the employees of the unloading consignee for injuries proximately resulting from the negligence of the shipper in loading the car. See the following authorities: Edwards v. Southern Railway Company, 233 Ala. 65, 169 So. 715, 106 A. L. R. 1133; Fouraker v. Hill & Morton, Inc., 328 P. 2d 527; Owen v. Rheem Mfg. Co., 187 P. 2d 785; Pacific States Lumber Company v. Bargar, (9th C.C.A.), 10 F. 2d 335; Yandell v. National Fire Proofing Corporation, 239 N. C. 1, 79 S. E. 2d 223; Anno. 130 Am. St. Rep. 450.

The question of the respective liabilities of the shipper and consignee were settled before the case reached this Court and we are no longer burdened with this question, except insofar as this question has to do with acts of the shipper, who is said to have "triggered the later events", and the order of the consignee, through its agent, directing the appellee to cut the bands holding the poles. The question presented and determined in the original opinion in this case was whether or not the carrier was liable, and not whether the shipper was

liable as was true in the case of American Creosote Works of Louisiana v. Harp, supra, cited by the appellee.

## II

The claim of liability against the carrier must be based upon some duty owed to the consignee and its servants. This rule is expressed by the textwriter in the following language: "The liability of a railroad company for personal injuries and for damage to property caused by its negligence in the equipment, maintenance, or operation of its roads, as in the case of negligent injuries by other owners or proprietors of property generally, depends upon a breach of the duty to exercise the care which the law prescribes in the given circumstances, proximately resulting in damage to the plaintiff." See 44 Am. Jur., Railroads, Section 412, p. 625.

What duties did the delivering carrier in this case owe to the consignee and its servants? The general rule as to these duties is set out in 44 Am. Jur., Railroads, Section 434, p. 655, as follows: "The delivering carrier also owes to the consignee and to his employees engaged in unloading a railroad car which the delivering carrier has received from a connecting carrier the duty of making reasonable inspection of such car to determine whether it is safe for unloading, and to give the consignee notice or warning of defective conditions in the car which are discoverable by such inspection." See Note American and English Annotated Cases, Vol. 16, p. 1155-6; Vincent & Hayne v. Yazoo & M. V. R. Co., 114 La. 1021, 38 So. 816.

This rule is expressed in American and English Annotated Cases, Vol. 9, p. 991, as follows: "But when a car is loaded for a through shipment, and must pass over one or more connecting roads before it finally comes into the possession of the ultimate carrier for delivery to the consignee, it is the duty of the ultimate

carrier, before delivering it, to examine it to ascertain whether it is in such a state of repair that the servants of the consignee, * * * can enter upon it with reasonable safety for the purpose of unloading it; and if it is not in such a condition, it is the duty of the railroad to make the necessary repairs, or to notify the consignee of the unsafe condition of the car, so that the consignee can warn his servants before they enter upon it.'' There are many cases cited, including the following: Sykes v. St. Louis & S. F. R. Co., 178 Mo. 693, 77 S. W. 723; Gulf W. T. & Ry. Co. v. Wittnebert, 104 S. W. 424.

In the case of Yandell v. National Fire Roofing Corporation, et al., 239 N. C. 1, 79 S. E. 2d 223, the Court said: ''A delivering carrier by rail, which delivers to the consignee for unloading a car received by it from a connecting carrier, owes to the employees of the consignee, who are required to unload the car, the legal duty to make a reasonable inspection of the car to ascertain whether it is reasonably safe for unloading, and to repair or give warning of any dangerous condition in the car discoverable by such an inspection.'' The great weight of authority is in accord with the foregoing authorities. See Anno. 152 A.L.R. 1313; 126 A.L.R. 1095; Erie Railroad Company v. Murphy (C.C.A. 6th), 108 F. 2d 817, 126 A.L.R. 1093; Stokes v. Burlington-Rock Island R. Co., 165 S.W. 2d 229; Edwards v. Southern Railway Company, supra.

## III

■■ The burden of proof was upon the plaintiff to show that the carrier did some act of negligence or failed to perform some duty which proximately contributed to the injury of the plaintiff and which was violative of a duty owed to the plaintiff by the carrier. 38 Am. Jur., Negligence, Sec. 285, p. 973; Thompson v. Mississippi Cent. R. Co., 175 Miss. 547, 166 So. 353;

Scoggins v. Vicksburg Hospital, Inc., 229 Miss. 770, 91 So. 2d 837, 70 A.L.R. 2d 368.

 █ The evidence on which the plaintiff sought to establish the negligence of the carrier was based upon the testimony of Mr. Mayerhoff, to the effect that the shipper put metal bands around the load of poles, and pulled the bands taut and tried to get all of them about the same tightness, but that it was improper to put tremendous pressure on the bands. Mr. W. O. Smith was the agent in charge of the adjustment of the load of poles for the defendant carrier. He testified that he put an extra metal band around the north end of the load and tightened it real tight. It is argued that this testimony is sufficient to take this case to the jury, but from a careful examination of the testimony we find that this witness also testified as follows: "Q. Well was this band placed around the poles unusually tight, or any tighter than the other bands around the poles? A. I wouldn't say it was unusually tight, and it shouldn't have been any tighter than the other bands around the poles." From the whole evidence it appears to us that the testimony is entirely too speculative from which to deduct the inference that the placing of an iron band around the north end of the load of poles by the carrier was a negligent act which contributed to the hurt and injury of the plaintiff. The testimony shows that the poles did not roll off the cars when the iron band on the north end was cut.

 █ This Court does not adhere to the "scintilla of evidence doctrine", but has adopted the more modern rule. The modern rule is expressed by the textwriter in 53 Am. Jur., Trial, Sec. 176, p. 152, as follows: "* * * an issue should not be submitted to the jury where there is only a scintilla of evidence, where the testimony barely raises a conjecture in support of the view sought to be established, or where there is no substantial evidence." See Larry v. Moody, 242

Miss. 267, 134 So. 2d 462; Thomas v. Williamson, 185 Miss. 83, 187 So. 220; Equitable Life Assur. Soc. of United States v. Mitchell, 201 Miss. 696, 29 So. 2d 88; Alabama Great Southern R. Co. v. Alsup, 101 F. 2d 175.

## IV

In the next place, assuming arguendo that the "nesting of the poles" was disturbed by the adjustment made by the carrier, but the load could nevertheless be safely transported to its destination, the Railroad Company was not required to unload the poles for the consignee, it was only required to notify the consignee of any danger in the shipment of freight and equipment known to the carrier, to the end that the consignee might be warned of the danger.

The testimony introduced in the record in this case shows that the consignee was not ignorant of the proper method of unloading the shipment of freight delivered to it. The consignee was an electric power company carrying on a business involving the constant use and movement of poles; moreover, the consignee employed persons who were experienced in the unloading of long poles, and who had the proper heavy equipment adapted to that purpose. The plaintiff, himself, had previous experience in unloading poles and was familiar with the operation of the unloading of equipment. It appears from the testimony that the experienced servants of the consignee ordinarily used the "drag line" to pull and break the bands from the stakes, but that on this occasion the consignee directed its servants to cut the bands. The testimony also shows that the agents of the consignee inspected the shipment of poles and observed that the poles were "not nesting like that; not in this car." Mr. H. R. Meredith testified that: "There was two of the poles that the little end, I would think, was turned right down nearly toward the floor, and one

end was sticking up high at the south end, where I was. They weren't on there straight, like they were on the other cars; but I would not say they were in any bad shape at all." The plaintiff testified that the poles were leaning against the "green saplings", and that he saw that one pole was "out of kilter." In short, the testimony shows that the plaintiff and the other persons unloading the poles knew that they were not in a "nesting position"; that the poles were leading against the "green saplings" and that there were taut iron bands around the load of poles. The defective condition of the load of poles was not only obvious to a casual observer, but was in fact observed by the consignee and its servants.

The testimony further reveals that Mr. Black, the purchasing agent for the consignee, wrote a letter to Mr. Sykes, dated September 15, 1959, advising him that he had found out from the carrier, Illinois Central Railroad, that the double car of poles was in bad order, and that the Railroad would attempt to correct the trouble with the load. The consignee therefore not only knew that the Railroad had attempted to correct the load, but the condition of the shipment was apparent to the consignee and its servants at the time they attempted to unload it. The consignee had all the notice it might have had from the carrier, had the carrier warned it that the poles were not in a "nesting position" and that they were leaning against the "green saplings", and that the carrier had placed a metal band on the north end of the load.

 █ It is a general rule of law that the duty to give warning disappears entirely when it is shown that the injured person did, in fact, observe and fully appreciate the peril, notwithstanding his knowledge, he acted — the duty ordinarily required of a carrier to give notice of a defect in a shipment is obviated. See 38 Am. Jur., Negligence, Sec. 91, p. 750.

■■ Upon a record apparently identical in its salient facts with that of Edwards v. Southern Ry. Co., 233 Ala. 65, 169 So. 715, 106 A.L.R. 1140, the United States Circuit Court of Appeals in the case of Southern Ry. Co. v. Edwards, 44 F. 2d 526, reversed a judgment for the plaintiff and remanded the cause for a new trial, and said: ''The condition which gave rise to danger to persons who might undertake the unloading of the car was open and visible and any danger or risk therefrom to the deceased was one which, as between the deceased and his employer, was assumed by the former. * * * We are aware of no valid reason for holding that a carrier is under a duty to give notice or warning of a condition which is so visible that any danger therefrom must be apparent to and appreciated by a person of ordinary intelligence, prudence, and experience who undertakes the unloading of a car.'' Compare 44 Am. Jur., Railroads, Sec. 433, p. 654.

The foregoing rule is similar to the common-law rule that the owner of buildings, land and appurtenances, is liable in damages to an invitee for defects and the unsafe condition for use in the manner consistent with the purpose of the invitation, unless the owner gives adequate and timely notice and warning of the latent and concealed perils which are known, or should be known, to the owner but unknown to the invitee. 38 Am. Jur., Negligence, Sec. 96, p. 754.

Both of these rules requiring notice and warning are based upon the fact that the carrier or owner has superior knowledge to that of the invitee or consignee. The textwriter in 38 Am. Jur., Negligence, Sec. 97, p. 757, points out the exception to the later rule in the following language: ''There is no liability for injuries from dangers that are obvious, reasonably apparent or as well known to the person injured as they are to the owner or occupant.''

## V

Finally, a careful reading of the record in this case reveals that the consignee's answer to the interrogatories propounded by the plaintiff, admits that its agent, Mr. Sykes, employed Mr. Meredith "and pointed out to Mr. Meredith the work to be done" and was present and observing when the accident occurred. The testimony further shows that Mr. Sykes directed Mr. Meredith to cut the bands rather than pull them apart with the dragline. The consignee settled with the plaintiff and an order was entered dismissing consignee from the case. See 27 Am. Jur., Independent Contractors, Sec. 31, p. 510. It is therefore apparent that the consignee, its servants and the plaintiff, acted with full knowledge of the condition of the load of poles, and chose to unload the poles in a manner known to them to be dangerous, and for that reason this Court said in the original opinion that, "We fail to find in the record any evidence of negligence on the part of the appellant, Illinois Central Railroad Company * * *."

Therefore, for the reasons above set out, we are of the opinion that the suggestion of error should be overruled.

Suggestion of error overruled.

*McGehee, C. J.,* and *Kyle, Gillespie* and *Jones, JJ.,* concur.