SMITH, Justice:
American Cyanamid Company appeals from a judgment of the Circuit Court of Jackson County for $50,000 recovered against it in a personal injury action brought by appellee, Clinton Dees.
The defendants named in the declaration at the time of trial were: General American Transportation Corporation, American Cyanamid Company, Louisville & Nashville Railroad Company and Mississippi Export Railroad Company. The case was removed to the United States District Court for the Southern District of Mississippi but, after a hearing, that court remanded it to the Circuit Court of Jackson County where it was eventually tried. International Paper Company was allowed to intervene as plaintiff for the purpose of recovering sums paid as workmen’s compensation to Dees, its employee.
At the conclusion of the testimony, each of the defendants moved for a directed verdict. The trial court sustained the motions of Louisville & Nashville Railroad Company and General American Transportation Corporation and these parties went out of the case. No appeal or cross appeal has been perfected from this action of the court. The issues, as to the remaining defendants, Mississippi Export Railroad Company and appellant, American Cy-anamid Company, were submitted to a jury which returned a verdict in favor of defendant, Mississippi Export Railroad Company but against defendant-appellant American Cyanamid Company for $50,000. No question is raised here that the amount of this verdict is excessive.
*391 This appeal is that of American Cy-anamid and is from the judgment entered pursuant to the verdict against it. There is no appeal or cross appeal as to Mississippi Export Railroad Company.
A brief summary of the facts is necessary. Appellant, American Cyanamid Company, is engaged in the large scale manufacture and sale of chemicals, including sulphuric acid, a chemical used in the manufacture of paper. In furtherance of its business and for the purpose of use in the delivery of its products to its customers, American Cyanamid Company leased from General American Transportation Corporation certain railroad cars, including the tank car which later became involved in this case. The original lease of the tank car was entered into in 1962 and it was kept and used by American Cyanamid Company for its purposes from time to time thereafter.
On April 1, 1968, this tank car was loaded with sulphuric acid by American Cy-anamid Company at its plant at Mobile, Alabama for eventual delivery to its customer, International Paper Company. On April 4, 1968 the loaded car was picked up by Alabama State Docks Terminal Railway and delivered to Louisville & Nashville Railroad Company which transported it to Kreole, Mississippi, where the car was spotted on its tracks. Upon instructions issued by International Paper Company, Mississippi Export Railroad Company picked up the car and moved it into the yards of International Paper Company on April 6, 1968. The loaded car remained on International Paper Company premises until April 16, 1968, the date on which Dees was injured.
The incident, as the result of which Dees sustained his injuries occurred when, as an employee of International Paper Company, and in the discharge of his duties, he boarded the tank car to assist in transferring its contents to International Paper Company tanks.
The car was constructed with an iron platform on top of the tank for use by persons engaged in filling or emptying it, from the center of which protruded a cylindrical member with inlets and outlets for filling and emptying. Dees’ duty was to handle the tank car end of the pipe or hose which another employee of International Paper Company, stationed at the International Paper Company tank, extended to him and by means of which the contents of the car were to be unloaded. In order to get at the unloading port it was necessary that Dees ascend the ladder affixed to the car to the iron platform and there attach his end of the hose. The platform to which Dees mounted was equipped with iron railings. In reaching out for the end of the unloading hose which was being extended to him Dees leaned against this railing or used it for support and it broke off, causing him to fall from the top of the car to the pavement and to injure himself.
The sections of railing which had broken and precipitated Dees’ fall were placed in evidence. Also, a number of clear photographs of the car, the points where the breaks in the railing had occurred and of the scene, were placed in evidence. There was uncontradicted testimony to the effect that these photographs reflected fair representations of those objects as they had appeared upon the occasion of Dees’ injury.
A considerable time after the incident had occurred in which Dees was injured, the broken railings were turned over to a metallurgist for examination. This person testified in the case and was shown to possess impressive credentials as an expert in his specialty. As a witness for Dees, and basing his testimony on his examination of the broken railings and the photographs in evidence, he stated that the railing had been coated with a protective coating which had deteriorated with the passage of time so that corrosion had taken place at the ends where it had been joined to the car. He said that the coating, or paint, as it was sometimes referred to, was intact in the middle section of the. railing, and that *392 there (where the coating was intact and corrosion had not occurred) the pipe forming the railing had' remained undamaged and was approximately 19%ooo of- an inch thick.
At the ends, near the points of attachment where the railing had broken off, the paint or covering had disappeared and extensive corrosion had occurred. At one of these broken ends the thickness had decreased to 19iooo of an inch. He testified further that the conditions described and reflected by his examination were such as to indicate that they had existed for a minimum of 3 to 6 months prior to their ultimate failure. Appellant argues vigorously that this witness should not have been permitted to testify because his examination of the pipe was made too long after the event and that the pipe, in the meantime, had been kept where it might have been exposed to weather and perhaps to chemical gases. These factors were before the jury, as well as the photographs showing the condition of the pipe as it had appeared, according to the testimony, on the date of Dees’ injury. The pipe itself was also in evidence. The trial court did not abuse its discretion in permitting this witness to testify as an expert in the field of metallurgy. The weight of his testimony was for the jury.
American Cyanamid Company assigns as error the action of the trial court in denying its motion for a directed verdict.
Appellant’s argument on this point is directed, in part, to the proposition that the negligence, if any, which proximately caused Dees’ injury was that of one or more of the carriers which transported the car from the plant of American Cyanamid Company to International Paper Company, or was that of International Paper Company which, it is argued, would have been liable but for the fact that its common law obligation to respond in damages had been commuted under the terms of the Workmen’s Compensation Act.
To sustain these contentions, it is not enough to demonstrate that negligence of the carriers or of some of them or of International Paper Company proximately contributed to Dees’ injury, or that Dees himself was guilty of contributory negligence, unless it can be shown also that no negligence of American Cyanamid Company was a proximate contributing cause.
At the time of Dees’ injury, this car had been under lease to American Cyanamid Company for some 4 or 5 years. It had been retained upon the premises of American Cyanamid Company between uses for delivery of chemicals to American Cy-anamid Company’s customers. Thus, at the time the railing collapsed, American Cyanamid Company had enjoyed every opportunity of inspecting it and of being familiar with its condition. It was loaded by American Cyanamid Company at a time when the evidence indicates that the railing was in a dangerously weakened condition and turned over to the carriers for delivery to International Paper Company. The circumstances admit of no other conclusion than that it was within the contemplation of the shipper that employees of International Paper Company would have to ascend to the railed platform for the purpose of unloading the car. Moreover, the obvious function and only reasonable purpose of placing iron rails around the platform was that they should serve as guards to prevent persons on it from falling off.
In passing upon the sufficiency of the evidence as against American Cyanamid Company to withstand its motion for a directed verdict all of the evidence favorable to Dees, the party against whom the verdict was requested, must be regarded as being true, together with all inferences favorable to him which the evidence is reasonably capable of supporting. So considered, the jury was warranted in finding that the paint or coating of the platform railing, while intact in the middle portions of the rail, had disappeared from the “ends” or from that part of the railing at and near where it was joined to the plat- ■ form and corner posts and that at these points the coating had disappeared and the railing had corroded so severely that at one of the places where it broke or gave way it was only about ^ooo of an inch thick as contrasted to[3] In passing upon the sufficiency of the evidence as against American Cyanamid Company to withstand its motion for a directed verdict all of the evidence favorable to Dees, the party against whom the verdict was requested, must be regarded as being true, together with all inferences favorable to him which the evidence is reasonably capable of supporting. So considered, the jury was warranted in finding that the paint or coating of the platform railing, while intact in the middle portions of the rail, had disappeared from the *393 “ends” or from that part of the railing at and near where it was joined to the plat- ■ form and corner posts and that at these points the coating had disappeared and the railing had corroded so severely that at one of the places where it broke or gave way it was only about ^ooo of an inch thick as contrasted to 19%ooo of an inch where the coating was still intact. At the other point where it broke its thickness had been diminished by corrosion to about 49iooo of an inch. The evidence was capable of supporting a jury finding that this condition had existed for a period of several months before Dees’ injury, that it would have been apparent upon reasonable examination or inspection, that the “inspection” claimed to have been made by American Cyanamid Company could not have failed to disclose it if it had been reasonably thorough, and that it had not been discovered because such inspection had been negligently and cursorily conducted.
We are of the opinion, therefore, that the evidence was sufficient to support a jury finding of negligence on the part of American Cyanamid Company in that it negligently sent out a car in a dangerously defective condition, that such condition would have been discovered by a reasonable inspection, that the danger to employees of International Paper Company who would be required to use the railed platform in unloading the car should have been anticipated and was reasonably foreseeable.
The only remaining aspect of this question which must be considered is whether the duty to inspect, said to rest upon the carriers, and particularly upon the ultimate deliverer of the car to International Paper Company, constituted such an efficient intervening proximate cause of Dees’ injury as to supervene, cut off or make too remote, as a proximate contributing cause, the original negligence of American Cyanamid Company.
American Cyanamid Company had possession of this car for a number of years under its lease, with unequalled, and in fact, unlimited opportunity to observe the’ progressive deterioration of the guard rails of the platform. They knew that this platform must be used by consignee’s employees for unloading the car. American Cyanamid Company, insofar as its negligence in dispatching to International Paper Company a dangerous and unsafe car is concerned, occupies a position analogous to that of an original owner of a car which is indistinguishable as to tort liability, under the facts in this case, in any relevant or material particular. The jury was justified in finding that American Cyanamid Company was negligent in failing to discover the dangerous condition or in negligently failing to repair it or to return the car to the lessor-carrier for repairs. The evidence also is capable of supporting a finding that such defect had existed for a long time and was discoverable upon reasonable inspection, and that danger of injury therefrom to employees of the consignee, who would be required to unload the car, was reasonably foreseeable. In American Creosote Works of Louisiana v. Harp, 215 Miss. 5, 12, 60 So.2d 514, 517 (1952), Annot., 35 A.L.R.2d 603 (1954) this Court said:
There may be more than one proximate cause of an injury, 38 Am.Jur., Negligence, § 63, and if appellant’s negligence proximately contributed to the injury, as the jury has found that it did, then appellant is liable even though its negligence was not the sole proximate cause thereof. Brewer v. Town of Lucedale, 189 Miss. 374, 198 So. 42; Gulf Refining Co. v. Brown, 196 Miss. 131, 16 So.2d 765; Planters Wholesale Grocery v. Kincade, 210 Miss. 712, 50 So.2d 578.
Also, in American Creosote, supra, this Court quoted with approval from the old English case of Elliott v. Hall, 1885, 15 Queen’s Bench Division 315, where it was said:
It was clearly part of the contract for the sale of the coal to plaintiff’s employ *394 ers that it should be conveyed in a truck to the buyers, and it must necessarily have been contemplated that, when it arrived at destination, the truck would be unloaded by buyer’s servants. I think it plain that under these circumstances a duty arose on the part of the defendant towards the plaintiff. * * * It is contended that there is no duty because there was no contract with the plaintiff, but the plaintiff was acting as the servant of the company with whom the contract was made, and the defendant must have known that the buyers would not unload the coal themselves and that their servants would do so. Under these circumstances it seems clear to me that there was a duty not to be guilty of negligence with regard to the state and condition of .the truck. (Id. at 10, 60 So.2d at 516).
The present appeal presents no question for our decision as to whether the carriers (or some of them) or International Paper Company or Dees himself may have been guilty of negligence proximately contributing to the injury, and consequently we express no opinion as to that possibility.
American Cyanamid Company contends that its practice, followed in the present case, of executing a “trip” lease of the car to its consignee under the terms of the lease effectively shifted the burden to the consignee of discovering and reporting for repair defects in cars used by American Cyanamid Company for transporting its products, and relieved the latter from all duty with respect thereto. However, the original negligence of American Cy-anamid Company, in consigning to International Paper Company a tank car in a dangerous condition under the circumstances already adverted to was continuing, and without alteration, change or interruption and the jury found that it proximately caused or contributed to the injury of Dees. The liability of American Cyanamid Company was not superseded by the concurring negligence, if any, of any of the other parties to the transaction.
Moreover, the fact that International Paper Company may have neglected an obligation, sought to have been imposed upon it under the terms of its “trip” sublease of the car from American Cyanamid Company, to accept the car “as is” and to discover defects and to return the car for repairs, cannot exculpate the latter from its ' tort liability to Dees. For these reasons, appellant’s criticism of plaintiff’s instruction Number 6 is not well taken. The question of contributory negligence on the part of Dees was properly submitted to the jury under an instruction granted at the request of American Cyanamid Company. It must be considered that negligence on the part of Dees, if any was found to have contributed to his injury, is reflected in the amount of the verdict under the Mississippi Comparative Negligence Statute.
Appellant cites Illinois Central Railroad Company v. Crawford, 244 Miss. 300, 140 So.2d 90 (1962), suggestion of error overruled, 244 Miss. 300, 143 So.2d 427 (1962). That case involved not a question of liability of the shipper, but solely one of the liability of a carrier. However, in passing upon and overruling the suggestion of error, this Court referred to the American Creosote case, supra, and said:
The appellee has cited the case of American Creosote Works of Louisiana v. Harp, 215 Miss. 5, 60 So.2d 514, 35 A.L.R.2d 603, as authority on the question of contributory negligence. In that case the employee of a consignee cut wires and iron bands on a load of poles at the direction of the foreman for consignee. When the last band had been severed the standards broke off at the cuffs and the load of poles rolled off the flat car and injured the servant of consignee. The Court held in that case that, under the facts presented, the alleged negligence of the shipper was a question for the jury. We think the Court was correct in its holding in the *395 Harp case, supra. The shipper cannot, in effect, set a trap and avoid liability on the ground that the shipper had no contractual relation with the servant of consignee. (Id. at 309-310, 143 So.2d at 428).
In Illinois Central Railroad Company v. Crawford, supra, the ratio decidendi is plainly stated by the Court in the following language: “We fail to find in the record any evidence of negligence on the part of the appellant, Illinois Central Railroad Company, that either caused or contributed to the plaintiff’s injuries. * * * ” The Court continues by saying that plaintiff’s injuries in that case had proximately resulted solely from negligence on the part of the plaintiff himself and of his employer.
There being no reversible error in the record, the judgment appealed from is affirmed.
Affirmed.
ETHRIDGE, C. J., and RODGERS, PATTERSON and ROBERTSON, JJ„ concur.